# THE PEOPLE OF THE STATE OF ILLINOIS *ex rel.* JOSIAH W. STINE

## *v.*

# THE BOARD OF SUPERVISORS OF VERMILION COUNTY.

1. MANDAMUS—*alternative writ—effect of demurrer to return.* A demurrer to a return to an alternative writ of mandamus, admits the truth of the allegations of such return.

2. HIGHWAYS—*power of commissioners to annul proceedings of their predecessors.* Commissioners of highways may modify, alter or rescind, any order their predecessors may have made, provided such modification, alteration or rescission, does not affect the rights of third persons acquired under such first order.

3. CONTRACTS—*annulling a contract by one party does not impair its obligation.* Where one party to a contract annuls it, without the consent of the other, such act does not impair its obligation, if it had any. That can always be enforced.

4. HIGHWAYS—*duties of county supervisors—after report of commissioners relative to construction of improvements—when may decline to levy special tax therefor.* After the estimate of a public improvement has been properly certified to a board of supervisors, such board is not required to act *instanter* thereon, and to levy and collect the necessary tax therefor, but may, upon due consideration of all the attendant circumstances of the case, if, in its judgment, it may so decide to act, decline to levy such tax. The levy and collection of such special tax, to

the amount of such estimate, is a matter entirely discretionary with the board.

5.  MANDAMUS—*alternative writ—who not entitled to.*  In a matter concerning public improvements, a writ of mandamus should be denied, where the relator, a mere individual tax payer, has no other interest in the subject matter than the public generally.

6.  HIGHWAYS—*proceedings of commissioners of—may be inquired into by board of supervisors—for the purpose of ascertaining their jurisdiction.*  A county board of supervisors have the right, on the instigation of any tax payer, or *ex mero motu,* to inquire into all the facts which give to highway commissioners in their proceedings, jurisdiction, and when jurisdiction is wanting, all acts done to enforce jurisdiction are void.

7.  SAME—*powers of commissioners of.*  The commissioners of highways have no authority to order the construction of a bridge at a place where no highway exists; and if such fact appears, the board of supervisors to whom the estimate has been reported, may disregard their action.  The existence of a public highway is the first predicate.

PETITION for a mandamus.

The facts in the case are stated in the opinion of the court.

Mr. E. M. HAINES and Mr. A. C. STORY, for the relator.

Messrs. STUART, EDWARDS & BROWN, and Mr. C. BECKWITH, for the respondent.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court:

The questions made on this record arise upon a demurrer to a return to an alternative writ of mandamus, sued out of this court, on the relation of Josiah W. Stine, against the Board of Supervisors of Vermilion county.

The object of the proceeding was, to compel the board of supervisors to levy a tax, sufficient in amount, as found by the commissioners of highways, and duly laid before the board of town auditors, of the town of Danville, to construct a bridge across the north fork of Vermilion river, on the east

half of section seven, in township nineteen, north of range eleven west, near Hobson & Aylesworth's woolen factory, in the village of Danville, on the public highway, at the point where it intersects and crosses that river.

The expense thereof was estimated by the highway commissioners at fifteen thousand seven hundred dollars, and the amount raised by ordinary road taxes applicable to this object, was two hundred dollars only, leaving fifteen thousand five hundred dollars to be levied.

This estimate, the board of town auditors laid before the board of supervisors on the 27th day of March, 1866.

The board of supervisors refused to levy the tax for reasons which appear in the return, the truth of which the demurrer admits.

The first order of the commissioners of highways to construct the bridge, and their estimate of the cost, was made March 27, 1866. This board was superseded by the election of another and different board, who, on the ninth of April, 1867, at a regular meeting, vacated, rescinded and annulled the first order, and all previous action, orders and resolutions and doings of those commissioners in relation to this bridge, of which the board of supervisors were duly notified at their September session of that year.

This action of the board of highway commissioners must be taken in this proceeding as evidence that the public convenience did not require the bridge. This record does not show that a contract had been made under the first order, by which rights of third persons had become vested. An agreement is alleged, by which Kiger, one of the commissioners of highways, was to have the contract for building the bridge at his own figures, but that it was awarded to him does not appear, and the agreement itself is denounced as fraudulent, and a contract, if made, is alleged to have been made secretly, without offerings, and in violation of the law.

If this be so, then the power to rescind the first order cannot be questioned. No private rights are affected by the rescission. The public convenience and necessities are of the first importance, and those persons appointed as guardians over them can modify, alter or rescind any order their predecessors may have made, which does not involve the destruction of private rights.

It would appear, from this record, that there was not, at the time this estimate for the bridge was made, any public road at the point indicated. The relator, in answer to this, insists that the act of vacating the road by the board of supervisors is an admission there was a road to be vacated. There is force in this, and it follows, there being a road there at a time prior to the action of April 9, 1867, and it was then vacated, the presumption must obtain it was vacated according to law. That the same body which has power to open a road or build a bridge in aid of it, cannot vacate the road, or annul the contract for building the bridge is not admitted. A contract of this nature can be annulled by the act of one party, he being liable for all damages consequent thereon.

Annulling a contract by one party to it, without the consent of the other party, impairs in no degree the obligation of the contract, if it had any. That can always be enforced in a court of justice.

But the contracting party is not the complainant here. He makes no claim to the interposition of this court to compel the performance of the contract, or inform the court that his rights are about to be taken from him. That a mere tax payer, who has no particular interest in the subject of the controversy, can proceed to the extremity sought by this proceeding, cannot be admitted. This consideration would have denied the relator the alternative writ.

But we pass to other topics.

The broad ground is assumed in this case, that the decision of the commissioners of highways of a township in counties

adopting township organization, that a bridge was necessary at a particular place, and should be constructed, and estimates therefor made and delivered to the board of town auditors, and by them duly placed before the board of supervisors of the county, is final and conclusive, and of a nature so powerful as to compel immediate action by the board to levy the necessary amount of taxes to defray the expense of its construction.   In the broad terms in which this is put forth, we cannot acquiesce.

A reference to the township organization law will show the power of the commissioners of highways in this regard, and the consequent duty of the board of supervisors.

Section one of article seventeen, provides that the commissioners of highways, in the several towns shall have the care and superintendence of highways and bridges therein, and it shall be their duty, 1st, to give directions for the repairing of roads and bridges in their respective towns, and to cause the building of bridges where the public interests or necessities require it; to cause the highways and bridges which are or may be erected over streams intersecting highways, to be kept in repair.

These all pre-suppose the existence of a public highway.

By section three of the same article. these commissioners are required to render to the board of town auditors, at their annual meeting for auditing the accounts of town officers, an account in writing, stating, among other things, the improvements necessary to be made on such roads and bridges, and an estimate of the probable expense of making such improvements, beyond what the labor to be assessed in that year and the road tax will accomplish.

By section fourteen, it is provided, whenever it shall be necessary, in any town, to build a bridge, the cost of which shall be more than can be raised by ordinary road tax, the commissioners of highways shall lay before the town auditors of such town, a statement of the amount of money necessary

for the construction thereof, and said board of auditors shall certify the same to the board of supervisors of the county in which such town is situated. The amount so certified shall, by said board of supervisors, be levied on the taxable property of such town and collected by the collector thereof, in the same manner as other taxes are levied and collected.

This provision clearly contemplates, taken in connection with those we have cited, the erection of a bridge as a part of an established highway. It does not authorize them, for fancy or ornamental purposes, to erect a bridge which will not, when erected, be a highway, on a wide prairie where there is no water course to be crossed by it. The bridge must be a portion of some legally constituted public highway, and their estimates of the cost must specify at what point on such highway the bridge shall be built. If there be no public road actually existing, leading to the stream to be crossed by the bridge, no power would exist on the part of the commissioners to erect the bridge. This is plain, and results from the very nature of their office. They are commissioners of public highways, and they decide a certain highway requires a bridge of certain dimensions and structure. They make the estimates of cost, which they lay before the board of town auditors, whose only duty in that regard is to certify it to the board of supervisors. It is a condition precedent to all this, inherent in the very subject, that there shall be a subsisting public highway. This is too plain for argument.

What, then, is the board of county supervisors required to do, when the board of town auditors certify the estimate to them?

It is insisted by the relator, they have nothing to do but to levy and collect as taxes, the amount of the estimate; that they have not the least discretion in the matter, and, notwithstanding the condition of the tax payers may be most deplorable, not having wherewith to pay the ordinary assessments on their property, so vital to the support of their local governments,

yet they must be burdened with this additional imposition, on the mere say-so of the highway commissioners. The law does not in terms so declare. A fair construction of the act goes thus far and no farther, that the estimate certified to them shall become a charge against the taxable property of the county at some time, and when levied, it shall be levied on that kind of property, and collected as other taxes are levied and collected. It does not require a levy forthwith; it does not intend the board of supervisors shall pay no regard to the suffering condition of the taxables; it does not design they shall ignore and postpone all other business but this bridge, and that they shall act immediately, *instanter*, upon the estimate. The law means and intends no such thing—no such results.

Suppose the estimate of the highway commissioners, instead of being fifteen thousand dollars, had been ten times that amount, and the board of town auditors had certified it, and it was a matter of public notoriety there was no public highway at the place proposed for the bridge, and if there was one the bridge could be constructed, and that too of the most durable character, for ten thousand dollars—that one hundred and fifty thousand dollars was an unnecessary and an extravagant sum to be invested in so small a structure, and the board of supervisors knew, as they would know, such a tax levied and collected in a single year, (for it must be so levied and collected if the argument be sound,) would bankrupt, or greatly distress the tax payers, that they could exercise no discretion in the premises, not even as to the time when they shall direct the levy to be made? We do not believe such is a fair interpretation of the statute. The only reasonable construction which can be given to it is, that if the board of supervisors, on inspection of the estimate, and after due consideration of the condition of the tax payers, the one is enormously extravagant, and the others are not in a condition to bear the tax, its levy can be and should be declined by the board. They

surely do not sit in their high and responsible positions to be the mere passive instruments of other agencies, whose action may have been heedless, without due deliberation, or corrupt.

But if the board of supervisors have no discretion, and must act on the instant, who has the right to compel that action? Is it an individual tax payer, who has no other interest in the erection than the public generally? On what principle is it, that he shall be allowed to apply for this mandatory writ? The county authorities are bound to provide court houses in the several counties. They determine, by a proper proceeding in court, that they will erect a court house, and invite proposals and plans, which they accept; is it in the power of a holder of property, which would be benefitted by this erection, to demand this writ to compel the county to enter into contracts and complete the building, on the allegation that it will greatly benefit him and other owners of property in its vicinity, the authorities themselves believing the fiscal condition of the tax payers, or their treasury, is not such as to justify the expense?

These county authorities must, from the necessity of the case, have some discretion, certainly, as to the time when they will levy and collect a heavy special tax, else, if it were not so, highway commissioners, having the famous bridges of antiquity, or of modern times, in their "mind's eye," and ambitious of rivalry in this regard, might, if no check was upon them, bankrupt a people. It cannot be so, and such was not the intention of this law. We are not disposed to deny that the decision of these commissioners, that a bridge at a particular point, on a public highway, is a necessity, is *res judicata* as to the fact of the necessity; but when the board of supervisors are required to levy taxes to construct it, they have a right, on the instigation of any tax payer, or *ex mero motu*, to inquire if there be a public highway "at the point proposed," and if there be none, no power on earth can compel them to levy the tax. They have a right to inquire into

all the facts which give jurisdiction to the highway commissioners, and call it into action, and if the facts do not exist, the acts of the commissioners would have no binding effect on the board of supervisors, and they would be fully justified in disregarding their action. When jurisdiction is wanting, all acts done to enforce jurisdiction are void. The existence of a public highway is the first predicate. If that falls, all built upon it falls likewise.

The return shows, and the demurrer admits it, there was no public highway where this bridge was proposed to be built; that a portion of the bridge was within the town limits of the village of Danville, over which these highway commissioners had no sort of jurisdiction; and it further shows, all which is admitted, that the order to build this bridge was rescinded by the commissioners of highways subsequently elected, and before any private rights had become involved. Is it not, then, absurd to contend, under such circumstances, that the county supervisors should be compelled, by the mandate of this court, to levy a tax to pay for that which has no existence, and never can have, unless revived by some subsequent and appropriate action.

We refrain from taking up the several reasons urged in the return, as justificatory of the refusal of the county supervisors. The views we have expressed fully dispose of the whole case.

We refer to no authorities, as they seem to be unnecessary. General principles apply with peculiar force to the case, and by their force the peremptory writ must be refused. The demurrer to the return is overruled.

*Mandamus refused.*