THE PEOPLE OF THE STATE OF ILLINOIS, *ex rel.*
TAYLOR G. CHASE

*v.*

THE COUNTY COURT OF MACOUPIN COUNTY *et al.*

1. TAXATION BY COUNTIES—*control thereof by the county court—who may challenge their action in that regard.* To the county court is entrusted by law the exclusive power over the county revenues, and their collection, and

if, in their judgment, a tax which has been ordered is found to be unnecessary, they have the right to rescind the order and arrest the collection of the tax.

2. So where a county court had ordered a tax for several specific purposes named in the order, which had been extended upon the collector's book accordingly, and the successors in office of such county court ascertained that the indebtedness, for the payment of which one of the specified items of tax was ordered, had been satisfied, it was competent for the court to rescind the order of their predecessors, so far as they found the purpose thereof had been subserved.

3. And the mere fact that a person is a tax payer and a resident in the county in which such tax was ordered, will not authorize him to insist that the order directing the collection of a tax for a specific purpose, shall be restored, and the tax collected, when there is no longer any necessity for collecting such tax.

4. And where a county court ordered a tax for several specific purposes, a certain rate for each separate purpose, and among them a tax was ordered for the purpose of paying the interest which should accrue for the current year on a certain class of bonds which had been issued by the county, and sufficient for that purpose, a holder of any such bond can not complain that the county court have arrested the collection of some of the items of such tax not embraced in that intended to pay the interest on the bonds.

Application for mandamus.  The opinion of the court contains a sufficient statement of the case.

Messrs. WELCH & PALMER, Jr., for the relator.

Messrs. THORNTON & DAVIS and Messrs. RINAKER & WALKER, for the respondents.

Mr. JUSTICE BREESE delivered the opinion of the Court:

The questions presented on this record arise on a demurrer to the return of respondents, to an alternative writ of mandamus, issued out of this court, on the petition of Taylor G. Chase, and directed to the county court of the county of Macoupin, to compel them to vacate and annul a certain order entered by that court on its records, at the March term, 1870, by which a former order of that court, entered at the

October term, 1869, was declared illegal and proceedings under it arrested.

The facts of the case are, briefly, that the relator was a holder of what is called a court house bond, with interest coupons attached, duly issued to him, under the seal of the county court of Macoupin county, under the authority of an act of the general assembly, approved March 9, 1869. By this act, it was made the duty of the county court to levy a sufficient tax from year to year, not exceeding one per cent, in addition to the taxes then authorized by law, to pay the interest on the bonds to be issued in good faith, for the purpose specified in the act, and the principal when due.

After the issuing of the bond held by relator, the county court, at the October term thereof, in 1869, at a session held on the twenty-third of that month, entered an order on the record, directing that a tax of one dollar on each $100 valuation of the property in the county for the year 1869 should be levied to pay the court house indebtedness, and the relator claims that his bond was included in this order, and that the county clerk duly and legally entered this tax on his tax books, and in due time delivered the same to the sheriff for collection, who proceeded to collect the same, and who did actually demand and collect from many of the tax payers of the county a part of the same.

At the March term, 1870, the county court, in the matter of the assessment of the county revenue for the year 1869, on motion by certain tax payers of the county, to declare illegal and to direct the sheriff not to collect the tax known and described "special tax," "court house tax," and "bond tax," because made without authority of law and in violation of the rights of the tax payers of the county, entered an order sustaining the motion as to the so-called "court house tax," and denied the motion as to the "special tax" and "bond tax," and the clerk was required to serve a copy of the order upon the sheriff.

The county court make return to the alternative writ, and set out the order of the court, made at the October term, 1869, by which it appears that an order was entered—1, for the assessment of a tax of forty cents on each $100 valuation of property, for county purposes, for the year 1869; 2, an order that a special tax of one dollar on the same valuation of property be levied for the payment of the indebtedness of the county, upon the assessment of that year; 3, an order for a tax of one dollar on the same valuation, to be levied for the payment of court house indebtedness; 4, an order that a tax of fifty cents on the same valuation, to be levied for the payment, first, of interest, and then of the principal of the court house bonds; and, 5, an order directing the clerk to estimate and extend these taxes on the collector's books for 1869.

It is order 3, in the series, vacated by the court at the March term, 1870, and which it is the object of the relator to restore.

The respondents further say, in their return, that, at the time order 3 was entered, there was an existing and unpaid court house indebtedness for work done and materials furnished in the erection of the court house, which was afterwards fully paid and discharged, and when they made the order, at the March term, 1870, annulling order 3, there was no court house indebtedness requiring the collection of such tax, or to which it could apply.

And they further insist, in their return, that the order for the levy and collection of a tax of fifty cents on the $100, to pay interest on the court house bonds, is the only order which was made that applies to the bond and coupons of the relator, the interest on which is provided for by that assessment; that it is in process of collection, and will be collected before any interest will accrue on the bond of relator; and they say that the assessed value of property in the county for 1869, was $7,000,000, and that the tax of fifty cents on the $100, to pay interest on court house bonds, will be sufficient to pay the interest which will accrue during the present year upon those bonds mentioned in the writ.

The respondents also say, that after the order was made annulling the tax to pay court house indebtedness, and which the relator had paid under the assessment, the tax was refunded to him on his own application, and insist that he is thereby estopped to complain of the order arresting the collection of that tax.

The respondents insist that the county court, when they had ordered a levy of forty cents, a special tax of one dollar, and the tax of fifty cents on each $100 valuation, to pay, first, the interest, and then the principal, on the court house bonds, they then had exercised and exhausted all the power and authority conferred by law, and could not levy any further tax, and the respondents further aver that the act of March 9, 1869, conferred no authority on the court to levy the tax of one dollar on each $100, to pay court house indebtedness, but that the levy was made without authority of law, and was null and void.

The demurrer to the return admits all the facts well pleaded, but not the conclusions of law which may be supposed to flow from them. It brings before the court the whole law of the case, and as we view the case, the relator has no right to a peremptory writ.

The fact is distinctly stated in the return, that a tax of fifty cents on the $100 was levied, sufficient to meet the interest on these bonds; that it is in course of collection, and will be collected before any interest will accrue on the bond held by relator. This fact is admitted by the demurrer. If this is so, on what ground can the relator complain? So long as his bond is provided for, he surely has no right to challenge the action of the court in their management for the collection of the county revenue. Before he can successfully do this, it is incumbent on him to show he is injured by such action. The mere fact that he is a tax payer and a bond holder, and has paid the taxes under the rescinded order, gives him no such right, and the more especially, as on his own application, the taxes thus paid have been refunded to him.

Relator's counsel insist, that the fact being admitted, that he is a tax payer and a resident of Macoupin county, gives him a standing in this court to maintain mandamus against the county court, to compel the rescission of an illegal order, and against the collector, to compel the performance of a public duty, such as the collection of a legal tax, and reference is made to *The County of Pike* v. *The State*, 11 Ill. 202.

The case cited, is very different in principle from this case. There, a certain sum of money had been appropriated by the general assembly to the county, to be expended in the improvement of roads, construction of bridges and other public works, by name, stating the amount to be expended on each, dividing the county into districts, and making a commissioner for each district, to superintend the works within the same. This act was passed in 1839, and appropriated $500 to the improvement of the navigation of McKee's creek, and relator was appointed commissioner to superintend the work.

The money was to remain in bank, subject to the order of the county commissioners. They were to draw one-fourth of the money appropriated, and apportion the amount among the districts, and when the commissioner of a district certified he had expended the amount appropriated, the county commissioners were required to draw the residue, in fourth parts, until the whole should be expended. It would appear that the county commissioners, instead of depositing the fund in bank, loaned it out at interest, and in February, 1845, the general assembly passed an act legalizing this mode of using the fund, and further provided, that the county commissioners might apply all such money, when collected, to any and all purposes they might think proper.

On the application of the relator for a portion of the $500 appropriated to the improvement of McKee's creek, three installments of which had been furnished by the county commissioners, they declined to comply, alleging that, by the act of 1845, they had discretionary power over this fund, and that they should appropriate it to other objects.

It was on this state of facts the mandamus was awarded to compel the application of the fund as directed by the act of 1839.

The question arose, who should be the relator in such a case? The court said, that depended upon the object to be attained by the writ.   When the remedy is resorted to for the enforcement of a private right, the person interested in having the right enforced must become the relator.   He is considered the real party, and his right must clearly appear.   But when the object is the enforcement of a public right, the people are regarded as the real party, and the relator need not show he has any legal interest in the result.   It is enough that he is interested, as a citizen, in having the law executed, and the right in question enforced.

The act of March 9, 1869, is the act in the enforcement of which the relator has any interest, and if the fact appears, as it does in this case, that ample provision has been made for the interest on his bond as it may accrue, and as by that act required, he surely can not complain.   It certainly was not the intention of the general assembly, that the taxing power should be unnecessarily exercised.   So long as the county court provided a sufficient fund to meet the interest, their duty to the bond holders was fully discharged, and that they did so provide in this case, is admitted.

The order for a levy of one per cent for the payment of court house indebtedness, was, when made, perhaps proper, as there was a floating debt of this nature to be provided for.

It is alleged, in the return, that it was not ordered for the purpose of paying the bonded indebtedness, and this is admitted. It is also alleged that it was levied by their predecessors in office, and this is admitted, and when the respondents came to office, that indebtedness had been paid and discharged, and this is admitted.   These being the facts, we are at a loss to perceive a want of power in the court to arrest the collection of the tax, there being no use for its avails for any purpose.   Surely, the tax payers can not complain, for the repeal of the order was

for their benefit. To the county court is entrusted by law the exclusive power over the county revenue, and its collection, and if, in their judgment, a tax which has been ordered, is found to be unnecessary, they have the right to arrest its collection. This seems clear from the constitution of the court.

The record fails to show any injury resulting, or like to result, to any one, or to the public, by the abatement of this tax, and it fails to show that the rights of the relator are, or can be, injuriously affected by rescission of the order directing its levy. *The People ex rel. Stine* v. *Supervisors of Vermilion County*, 47 Ill. 256. In that case, it was said, the public convenience and necessities are of the first importance, and those persons appointed as guardians over them, can modify, alter or rescind any order their predecessors may have made which does not involve the destruction of private rights.

Neither private nor public rights being in any manner injuriously affected by the rescission of the order of October 23, 1869, arresting the collection of the tax authorized by it, we see no ground for granting a peremptory writ. Should it be granted, it would require the county court to do a great wrong, by the coercion of a tax which is not wanted for any purpose. Better, far better, that the money should remain in the pockets of the people to whom it belongs, ample provision having been made, in pursuance of the act of March 9, 1869, to meet the interest due on relator's bond, and on all other bonds of like nature.

The peremptory mandamus is denied.

*Mandamus denied.*