PATRICK TUCKER v. THE ERIE RAILWAY COMPANY.

JACOB GEIL v. THE ERIE RAILWAY COMPANY.

Argued November 7, 10, 1902—Decided February 24, 1903.

1. Railway policemen commissioned by the governor, under the act respecting railroads and canals (*Gen. Stat., p.* 2671), although appointed on the application of the railroad company, receiving their compensation from it, and subject to be divested of their powers by its act, are nevertheless state officers, charged with the performance of public duties, and for the proper discharge of their duties and exercise of their official powers are responsible, not to the company, but to the state.

2. In order to render a company responsible for an unwarranted arrest made by one of such policemen, and a subsequent malicious criminal prosecution by him, it is necessary to show that his action was instigated by the company or some of its officers or employes.

On rules to show cause.

Before GUMMERE, CHIEF JUSTICE, and Justices VAN SYCKEL and FORT.

For the plaintiffs, *John J. Fallon.*

For the defendant, *Corbin & Corbin.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE.    Tucker and Geil, the plaintiffs in these cases, were arrested while at the "oil switch" of the Erie Railroad Company, in the village of Garfield, on the evening of the 8th day of November last, by one Dwyer, without a warrant, upon a charge of stealing the brass journals

from some freight cars which were standing on the company's tracks at that point. They were first taken, by Dwyer, to the office of the Standard Oil Company, which was near at hand. While they were there two other men, Flynn and Delurey, came to the office, and, shortly after their arrival, Dwyer, with their assistance, took the plaintiffs before a magistrate, whose office was in the building, where a complaint was made against them by Dwyer, charging them with the larceny of the journals. On this complaint the plaintiffs were committed to the county jail by the magistrate; and Flynn and Delurey took them to Hackensack, where the county jail was located, and there delivered them into the custody of the jailer. They were subsequently indicted for the offence charged against them in Dwyer's complaint. The trial of the indictment resulted in an acquittal. The plaintiffs then, each of them, instituted a suit against the defendant company for false arrest and malicious prosecution. Their suits were tried together by consent, and resulted in verdicts in their favor.

The responsibility of the defendant company is rested upon the doctrine of *respondeat superior;* and the primary question presented by these rules to show cause is whether the three men, Dwyer, Flynn and Delurey, in causing the arrest and imprisonment of the plaintiffs, were acting as the agents or servants of the defendant company. The evidence shows that they were "railway policemen," appointed and commissioned as such, on the application of the defendant company, by the governor of the state, in pursuance of the authority conferred upon him by the act respecting railroads and canals. *Gen. Stat., p.* 2671.

By the provision of section 22 of that act the governor, upon the application of any railroad corporation made to him to commission such persons as the corporation may designate to act as policemen for such corporation, "may appoint such persons, or so many of them as he may deem proper, to be such policemen, and shall issue to such person or persons so appointed a commission to act as such policemen; a copy of which commission shall be filed in the office of the secretary of state." The twenty-third section of the act declares "that

every person so appointed shall, in the counties through which such railroad may run, possess all the powers of policemen and of constables, in criminal cases, of the several cities, wards of cities, and townships in such counties." By the twenty-fifth section of the act the compensation of such policemen is required to be paid by the company upon whose application they are appointed; and by the twenty-seventh section, whenever the company shall no longer require the services of such policemen, it shall file a notice to that effect in the office of the secretary of state, and thereupon the power of such policemen shall cease and determine.

It is plain, from a reading of the provisions of this statute, that, although these men were appointed on the application of the defendant company, received their compensation from it, and were subject to be divested of their powers by its act, they were nevertheless state officers, charged with the performance of public duties. They were, in law, police officers—constables—authorized to arrest persons guilty of criminal offences or breaches of the peace, not only in cases where the property of the company was involved, but in every case where the crime was committed or the peace broken within the boundaries of any of the counties through which the company's railroad ran. For the proper discharge of their official duties, as well as for the proper exercise of their official powers, they were responsible, not to the defendant company, but to the state. *Healey* v. *Lothrop,* 171 *Mass.* 263; *Tolchester Beach Improvement Co.* v. *Steinmaier,* 72 *Md.* 313.

In order, therefore, to render the defendant company legally responsible for the unwarranted arrest made by them, and the subsequent criminal prosecution maliciously instituted by Dwyer, it was necessary to show that their action was instigated by the company or by some of its officers or employes; that what they did was done by them as agents of the company, and not solely of their own volition as peace officers. *Jardine* v. *Cornell,* 21 *Vroom* 485. No such evidence was offered. On the contrary, the case made by the plaintiffs, and established as true by the verdict of the jury, under

the charge of the court, was· that their arrest was made by Dwyer on his own responsibility, without consultation with, or instruction from, anyone, and without the existence of any facts to justify him in his action; that this was equally true of the action of Dwyer, Flynn and Delurey in taking the plaintiffs before the magistrate; and that the subsequent prosecution was maliciously instituted by Dwyer, and was attempted to be supported by evidence manufactured by him, with the assistance of Flynn, for the purpose of making it appear that the plaintiffs were guilty of the charge which Dwyer had made against them. So far as the case shows the indictment subsequently found against the plaintiffs·was not procured by the defendant company, nor by anyone acting in, its behalf; and was prosecuted by the state without any suggestion by, or assistance from, it.

The rules to show cause should be made absolute.