JOSEPH TAYLOR, DEFENDANT IN ERROR, v. NEW YORK AND LONG BRANCH RAILROAD COMPANY PLAINTIFF IN ERROR.

Submitted July 11, 1910—Decided November 14, 1910.

1. The duties of a railway policeman, appointed on the application of a railroad company and commissioned by the governor pursuant to the "Act concerning carriers" (*Pamph. L.* 1904, *p.* 322, § 4), are confined to criminal cases.
2. If railway policemen appointed and commissioned under the act (*Pamph. L.* 1904, *p.* 322, § 4) are employed in matters aside from their duties under the statute, the employer may be held answerable for what they do, the same as in other cases of agency.
3. *Tucker* v. *Erie Railroad Co.*, 40 *Vroom* 19, distinguished.

---

On error to the Supreme Court.

For the plaintiff in error, *John S. Applegate & Son*.

For the defendant in error, *Aaron E. Johnston*.

The opinion of the court was delivered by

PITNEY, CHANCELLOR.   This was an action of tort for false imprisonment, wherein the verdict and judgment went in favor of the plaintiff.   The sole ground relied upon for reversal is the refusal by the trial judge of a motion, made at the close of the evidence, that a verdict be directed in favor of the defendant.

The proofs tended to show that in July, 1907, the railroad company obtained a judgment against Taylor before a justice of the peace of the county of Monmouth, sitting in the small cause court, in an action of tort, for one dollar damages and four dollars and eleven cents costs, and that on July 9th, 1908, a writ of execution was issued thereon against the goods and chattels of Taylor, the writ commanding the officer, for want of sufficient goods and chattels, to take the body of Taylor and convey him to the county jail. This writ was placed in the hands of one Wilson, a constable, for execution, and by virtue thereof he took Taylor into custody at the Asbury Park station of the railroad company, being assisted in so doing by one Lankinau. Handcuffs were put upon the prisoner's wrists, but were removed shortly afterwards; and subsequently he was taken by the constable to the office of the superintendent of the railroad company at Long Branch, about seven miles from Asbury Park. There, by order of the superintendent, he was set at liberty.

The plaintiff's contentions were that the judgment upon which the execution was issued had been already satisfied, so that the execution was invalid; that, assuming the execution was valid, the use of handcuffs amounted to unreasonable and excessive force; that the arrest was warranted only by want of sufficient goods and chattels out of which to make the judgment debt, and that Taylor owned and was in visible possession of personal property more than sufficient for this purpose; and that, without authority, the constable took Taylor to Long Branch, contrary to the direction of the writ of execution, which required him to be taken to the county jail.

Without spending time upon the other points, we think the taking of Taylor to Long Branch was clearly in excess of the warrant of the writ. But the railroad company was responsible for this only on the ground that Lankinau participated in it, and that Lankinau was in this behalf an agent of the defendant, acting within the scope of his authority.

It is argued for the plaintiff in error that there was no evidence that Lankinau directed or in any way instigated Wilson to take Taylor to Long Branch. This contention is

clearly untenable; there being testimony from which the jury might reasonably infer that Lankinau fully co-operated with Wilson in the arrest, and assented to, if he did not suggest, the taking of Taylor to Long Branch.

Lankinau's agency for the railroad company in the matter was not so clearly demonstrated, but we think there was sufficient evidence to require the submission of the question to the jury.

It appeared from the evidence that Lankinau was a "state detective"—a "state officer." It did not clearly appear, but seems to have been tacitly conceded, that he was a railway policeman appointed on the application of the railroad company and commissioned by the governor pursuant to *Pamph. L.* 1904, *p.* 322, § 4. Assuming, however, that he had such a commission, and by virtue of the statute possessed the powers of a policeman and of a constable in criminal cases, there was still abundant evidence that he was employed by the company in the performance of duties aside from those of a railway policeman.

The evidence was to the effect that he was regularly employed by the company, with the duty of seeing that order was preserved about its railroad stations, included in which was the duty of seeing that the hackmen kept their proper places. The plaintiff for ten years or more had been engaged in driving hacks during the summer seasons at Asbury Park. Repeated suits were brought against him by the railroad company in the justice courts during the summer of 1907. The records of four such actions were introduced in evidence, one of which resulted in the judgment upon which the body execution was issued. Lankinau figured as a witness for the company in each of these cases, and it was Lankinau who, in the month of July, 1908, made the necessary affidavit to show that Taylor was not a freeholder, in order that the justice might issue a body execution against him.

Lankinau was not only present when Taylor was arrested, but, according to one view of the evidence, he may be deemed to have acted as a volunteer in the arrest, in the sense that he was not requested by the constable to lend assistance. And

it was Lankinau who produced the handcuffs, which, as the jury might believe, were not needed except for their intimidating effect.

From this and other evidence the jury might well infer that a somewhat systematic campaign was being conducted by the railroad company in the effort to secure observance by the hackmen at the Asbury Park station of the company's regulations respecting the mode in which they should ply their trade; that Lankinau was especially charged by the company with the conduct of this campaign; and that the arrest of Taylor was only one step in its prosecution.

The duties of a railway policeman under the act of 1904 (*Pamph. L., p.* 322, § 4) are confined to criminal cases; in his official capacity he has nothing to do with arrests under civil process.

The case of *Tucker* v. *Erie Railroad Co.,* 40 *Vroom* 19, cited by plaintiff in error, was quite different from the present. There the plaintiffs were arrested upon a criminal charge, although without warrant, and all that was done by the railway policemen about the arrest and subsequent prosecution was done in the line of their duty under the governor's commission. The decision was that for their misconduct in arresting and prosecuting the plaintiffs the railroad company was not responsible, on the ground that, although the policemen were appointed upon the application of the company, they were responsible for the proper discharge of their official duties not to the company but to the state. But the opinion of the Chief Justice, who spoke for the Supreme Court, distinctly recognizes that if the prosecution of the plaintiffs had been instigated by the company, or its officers or employes, or if what the railway policemen did had been done by them as agents of the company, and not solely as police officers, the company would have been legally responsible.

In our opinion, if railway policemen, appointed and commissioned under the act of 1904, are employed by the railroad company, or any other corporation or person, in matters aside from their duties under the statute, the principal may be held answerable for what they do, the same as in other

cases of agency. Their commissions as railway policemen cannot be made a cloak to shield the company from responsibility for what may be done by such agents under the employment of the company, aside from the strict and proper performance of their duties as officers under the act.

There being evidence justifying the inference that in what Lankinau did about the plaintiff's arrest he was acting within the scope of his authority as agent for the defendant company, and the evidence justifying the further inference that he participated in the act of the constable in taking the plaintiff to Long Branch, in excess of the warrant of the writ of execution, it was proper to submit to the jury the question of defendant's liability to the plaintiff, and the motion for the direction of a verdict in defendant's favor was properly refused.

The judgment under review should be affirmed.

*For reversal*—None.