JOHN DELLABELLO, BY VICTOR DELLABELLO, HIS NEXT FRIEND, AND VICTOR DELLABELLO, INDIVIDUALLY, RESPONDENTS, v. THE CENTRAL RAILROAD COMPANY OF NEW JERSEY AND MICHAEL MATIS, APPELLANTS.

Submitted July 5, 1923—Decided March 29, 1924.

1. If railway policemen appointed and commissioned under the provisions of the "Act concerning carriers" (*Comp. Stat.,* p. 368) are employed in matters distinct from their duties under the statute, the employer may be held answerable for what they do, as in other cases of agency.

2. When a railway policeman was given a gun, and received instructions as to his duties by the police department of the railway company, and while guarding a freight train of the company, carelessly discharged his gun and injured the plaintiff, the railroad company is liable for his act.
3. It is not only an elementary but an inflexible rule of pleading at common law, that facts intended to be set up in bar of an action must be specially pleaded, and the Practice act of 1912 does not deviate from the common law in this respect.

On appeal from the Hudson County Court of Common Pleas.

Before Justices KALISCH and KATZENBACH.

For the appellants, *William A. Barkalow* (*De Voe Tomlinson* and *Edwin F. Smith* of counsel).

For the respondents, *Harlan Besson.*

The opinion of the court was delivered by

KALISCH, J.  The appellants appeal from two judgments entered against them in the Hudson County Common Pleas Court upon a verdict of a jury in favor of the respondents.

The plaintiffs below were father and son, and the action brought by them against the defendants was for damages sustained by the son, who was a minor, for injuries inflicted upon him through the negligence of a servant of the defendant while engaged in the scope of his employment, and for damages sustained by the father for loss of the services of his minor child, &c.  On a rule to show cause the verdict for the father was reduced to $1,500.

There are three grounds presented and argued in the brief on behalf of the appellants for a reversal of the judgments, which grounds are stated as follows:

"1. The trial court erred in refusing to nonsuit the plaintiff (*a*) as to defendant railroad company and (*b*) as to defendant Matis.

"2. The court erred in refusing to direct a verdict (a) for defendant railroad company and (b) defendant Matis.

"3. The court erred in leaving to the jury the question as to whether or not defendant Matis had complied with the provisions of section 4 of the Carrier's act (1 *Comp. Stat., p.* 368), and was or was not qualified to act as a railroad policeman within the city of Hoboken."

These grounds of appeal requiring a consideration of the pleadings and the testimony, it will be convenient to consider and discuss them in the order presented. The first two grounds may be properly considered together.

If there was any testimony, no matter how meagre, adduced on the part of the plaintiffs tending to show liability of defendants and no incontrovertible fact was established by the defendants which fact, as established, would constitute an absolute bar to the plaintiffs' right of recovery, the defendants were not entitled to succeed on either motion.

The gravamen of the plaintiffs' complaint is that on the 22d day of December, 1920, the defendant company had in its employ the co-defendant Michael Matis, whose duties were to protect trains and other property of the railroad against trespassers and thieves, and prevent theft of the property of defendant company and goods in transit on its trains, to eject trespassers from its premises, arrest trespassers on its property or freight cars, especially persons who might be seen on its freight cars for the purpose of stealing its property, and that the said Matis was equipped with a rifle or riot gun for the purpose of performing his duties in the respects mentioned, and that on the day in question, while riding on one of the defendant company's freight trains for the purpose of performing his duties in protecting the said train from trespassers and thieves, and against a person unknown to him whom Matis believes to have attempted to have robbed the train, so carelessly and negligently discharged the rifle or riot gun with which he was equipped that a missile or bullet therefrom struck and wounded the plaintiff John Dellabello, who was walking along a public street, by reason whereof, &c.

Both defendants Matis, who was also known as Mavis, and

the railroad company, in their answers, contented themselves in simply denying the allegations of the complaint. Thus the single issue raised was whether or not Matis, while acting within the scope of his employment, as an employe of the defendant company, through a negligent or careless act, caused the injury of which the minor plaintiff complains. There was testimony on the part of the plaintiff which tended to establish that Matis was employed by the company to protect its property from theft and trespassers by its answers to interrogatories submitted to it on behalf of the plaintiffs and by an examination of the defendant Matis before trial, at which examination he was asked:

"*Q.* Are you in the employ of the Central Railroad of New Jersey?

"*A.* I am a state detective, commissioned by the State of New Jersey.

"*Q.* Does the State of New Jersey pay you a salary?

"*A.* No.

"*Q.* Do you receive a salary from the Central Railroad of New Jersey?

"*A.* I do.

"*Q.* What services do you perform for the Central Railroad of New Jersey for this salary?"

This question was objected to by defendants' counsel and was not answered.

"*Q.* Are you in the employ of the Central Railroad in any capacity?

"*A.* Well, such as protecting trains and stopping stealing and everything like that; I don't know whether you would call that a state matter or a' railroad matter."

It is also to be gathered from the testimony of this witness that a person designated as "chief of police" of the railway police of the defendant company or the company's inspector paid the witness his salary, and that he received his instructions as to his duties from a superior officer whom the witness terms "my captain." The question was put to the witness: "What orders have you relative to the expulsion of trespassers

from the railroad company's property or the apprehension of thieves?'

"*A.* You use your own judgment."

It is quite clear from the testimony that the company's police department procures for its men the appointment which invests them with the powers of a police officer.

It is also a reasonable inference to be deduced from the testimony that the captains of the defendant company's police department were invested by the company with authority to direct and instruct the men under them as to their duties in protecting the defendant's company against thieves, trespassers, &c. According to Matis he took his orders and instructions from one of the company's police captains, and was left to use his own judgment in respect thereto.

The testimony as to the manner in which the plaintiff met with his injury was in conflict, and hence, was a matter for the jury to decide.

There was testimony to the effect that on December 22d, 1920, at about eleven o'clock in the forenoon, while the plaintiff John Dellabello was walking across a vacant lot near the foot of Fifth street, in the city of Hoboken, about one hundred and fifty feet from the defendant's railroad track, he heard a shot and felt a pain in the back, and walking a few steps further on he fell to the ground, when it was discovered that he had been shot in the back; that at that time a freight train of the defendant company was passing Fifth street and a man riding in the front on the train, with a rifle, fired the shot.

The defendant Matis, being called on behalf of the plaintiffs, testified that at the hour mentioned he was riding on a freight train of the defendant, and that he had in possession a shot gun, and that he fired the shot gun; that he did not fire at a man trying to get into one of those cars, but fired into the ground. On cross-examination he testified that about three cars back toward the hind end of the train there was a man getting on the train; that he was standing on the truss rods holding up against the side door, and he was trying to break the seal, and that he yelled at the fellow to get

off, and he still insisted on trying to break the seal, so he said if you won't quit, "I will shoot," and immediately he shot a shot down to the ground to scare him off, and he jumped off the car and ran up the bank and over the top. There was also testimony of the plaintiff that he saw the train coming along slowly and that he got on the train not for the purpose of stealing a ride but to cross over on the other side, and that he jumped off on the other side, right at Fifth street, and was crossing the empty lots when he was shot.

It is argued, on behalf of the appellants, that what Matis did was in the performance of his duties as a police officer, he being commissioned by the governor, under the statute (*Pamph. L.* 1911, *p.* 689), as a railway policeman, and, therefore, charged with the performance of public duties and for the proper discharge of his duties and exercise of his official powers is responsible not to the defendant company but to the state, unless the action of the officer is instigated by the company or its employes, and since this situation does not appear there should have been a direction of a verdict for the defendants, and further, there is no proof that Matis committed any act negligent or otherwise.

We think the facts of this case distinguish it from *Tucker* v. *Erie Railroad Co.,* 69 *N. J. L.* 19, and from *Goldberg* v. *Central Railroad Co.,* 97 *Id.* 374.

It seems to us that the case falls within the control of the principle enunciated by Chancellor Pitney in *Taylor* v. *New York and Long Branch Railroad Co.,* 80 *N. J. L.* 282, in speaking for this court (at *p.* 285), said:

"The case of *Tucker* v. *Erie Railroad Co.,* 40 *Vr.* 19, cited by plaintiff in error, was quite different from the present. There the plaintiffs were arrested upon a criminal charge, although without warrant, and all that was done by the railway policemen about the arrest and subsequent prosecution was done in the line of their duty under the governor's commission. The decision was that for their misconduct in arresting and prosecuting the plaintiffs the railroad company was not responsible, on the ground that although the policemen were appointed upon the application of the company,

they were responsible for the proper discharge of their official duties not to the company but to the state. But the opinion of the Chief Justice, who spoke for the Supreme Court, distinctly recognizes that if the prosecution of the plaintiffs had been instigated by the company, or its officers or employes, or if what the railway policemen did had been done by them as agents of the company, and not solely as police officers, the company would have been legally responsible.

"In our opinion, if railway policemen, appointed and commissioned under the act of 1904, are employed by the railroad company or any other corporation or person in matters aside from their duties under the statute, the principal may be held answerable for what they do, the same as in other cases of agency. Their commissions as railway policemen cannot be made a cloak to shield the company from responsibility for what may be done by such agents under the employment of the company, aside from the strict and proper performance of their duties as officers under the act."

Under the testimony the jury could have very properly found that what Matis did was done under the employment of the company aside from his strict and proper performance of his duty as an officer under the statute; that what he did was sanctioned by the defendant company through its agent, its railway police department, from the officers of which department Matis received instructions as to his duties; that the "captains" from whom he received such instructions were not police officers, under the statute, but officers and agents of the defendant company, authorized by it to instruct and direct those employed to do police work as to their duties; that it was the defendant company's railway police department who equipped Matis with the gun and gave him instructions and left it to the exercise of his own judgment when to use it; that Matis saw the plaintiff John jump from the train after the latter had jumped on and crossed from one side to the other, and that he, Matis, pointed the gun in the direction John was walking, not, however, with the intention of hitting him, but with intent to frighten and

scare away a trespasser on the defendant company's property, and in doing this was careless in discharging the gun.

The testimony of Matis makes it manifest that he had no intention to make an arrest and to act as a police officer under the statute.

We think the learned trial judge properly denied the motion for a nonsuit and for the direction of a verdict for the defendants.

The learned trial judge, with the consent of counsel for the respective litigants, in sending the case to the jury, submitted two questions in writing for the jury to answer, by its verdict:

"1. Do you find that John Dellabello was shot by a person riding on a railroad train of defendant company, which person aimed a gun at him or in his direction, at a time when said John Dellabello was walking on the street or on private property, one hundred and fifty feet, or thereabouts, from the railroad track, and which person fired said gun at or toward said injured plaintiff?

"2. If you answer the above question in the affirmative, then state whether or not such act was done with intention to shoot the plaintiff John Dellabello?"

In bringing in its verdict the jury answered the first question in the affirmative and the second in the negative.

The only other ground urged in the brief of appellants' counsel for a reversal is, that the court erred in leaving to the jury the question as to whether or not defendant Matis had complied with the provisions of the statute of 1911, *supra,* a supplement to the Carrier's act (1 *Comp. Stat.*, p. 368), and was, or was not, qualified to act as a railroad policeman within the city of Hoboken.

For the respondents it is argued that the appellants were not properly entitled to have the question whether or not defendant had complied with the provisions of the statute above referred to, submitted to the jury, because no such defense was pleaded by either of the defendants.

It is not only an elementary but an inflexible rule of pleading at common law that facts intended to be set up in bar

of a plaintiff's action must be pleaded specially. The new Practice act of 1912 does not deviate from the common law rule and requires defenses to the action to be specially pleaded. No such course was taken by the defendants in the present case. There was, however, testimony adduced on part of the plaintiff that Matis was appointed a police officer under the statute at the request of the defendant company. But this circumstance was not of itself of material consequence unless it also appeared that he had authority to act as such, at the time and place where the plaintiff John Dellabello received his injury. For the statute relied on by the defense provides "that no such appointee shall be *qualified to act* within the limits of any city of the first or second class in this state until such appointment shall have been registered with and ratified by the board having charge of the police department of such city." *Pamph. L.* 1911, *p.* 690.

It is clear that this provision restricts the appointee from doing any act on behalf of the state until he has qualified in the manner designated by the statute. The court will take judicial notice of the fact that Hoboken, the place where the accident occurred, is a city of the second class.

It cannot be successfully questioned but that the burden of establishing that the defendant Matis was qualified to act as a police officer of the state was upon the defendants. In this they failed. There was no proof that Matis was registered with and approved by the board having charge of the police department of the city of Hoboken.

In the light of the foregoing circumstances it seems to us that the trial judge, in submitting to the jury for its decision the question whether or not Matis was qualified to act as a railroad policeman, extended to the defendants a benefit to which they were not legally entitled, and ought not to be heard to complain.

Judgment is affirmed, with costs.