DuPont Rayon Company *v.* T. M. Henson.

*(Nashville,* December Term, 1930.)

Opinion filed April 4, 1931.

Tyne, Peebles, Henry & Tyne, for plaintiff in error.

O. W. Hughes and J. D. Wooten, for defendant in error.

Mr. Justice Chambliss delivered the opinion of the Court.

While a law student at Lebanon, Henson, with a companion, drove into the town of Old Hickory, about dark, with only one head light on and no tail light on his car. He was arrested when he stopped on the public highway running through the town by J. F. Moore, holding a commission as deputy sheriff from the sheriff of Davidson County, and held a prisoner pending the making of bond for his appearance for trial. Details of his treatment while under arrest, complained of, and as to which there is some conflict in the evidence, and, also, of his subsequent prosecution, are not necessary to be set forth, in view of the conclusions hereafter stated.

Henson prosecuted a suit against DuPont Rayon Company for damages for false arrest and imprisonment and recovered a judgment for $10,000, on the theory that the arresting officer and associates who assisted in detaining Henson as a prisoner, were employees of said Company, and that they acted within the scope of their employment, rendering DuPont Company liable for their wrongful acts.

The case has been transferred to this Court from the Court of Appeals, as involving a constitutional question touching the validity of the traffic law or rule under which the arresting officer acted. But this Court has not found it necessary to decide or discuss this question. In view of the conclusions hereafter announced it becomes immaterial.

The territory known as Old Hickory is the factory site of the DuPont Company, a community with a population of about 10,000, made up chiefly of the Company's employees, located in Davidson County, a few miles out of Nashville. It is unincorporated and therefore subject to the lawful police control of the sheriff only. The territory is owned by this Company, except the public highway running through the community, on which the arrest complained of was made. The Company, primarily for the protection of its large property interests, has assumed the burden of the expense of its police protection, by men of its selection, commissioned by and subject to the approval and reserved right of control of the sheriff.

Numerous errors are assigned, but we find it necessary to consider but one, which is determinative and is based on the following portion of the charge:

"Now, Gentlemen of the Jury, there is no conflict in the evidence as to the ground upon which the plaintiff

here sues, and there is no conflict in the evidence as to the charge made in the warrant against the plaintiff, which was sworn out by one of the defendant's servants and agents and served by him upon the plaintiff; all the evidence on both sides of the case, all of the witnesses on both sides of the case, who have undertaken to state the nature of the charge and the contents of the warrant, say, in substance, that the plaintiff was charged with driving an automobile on a public highway without a tail light and with only one headlight. The Court, therefore instructs you that said charge and said warrant were utterly null and void as there was no law in Tennessee at the time of plaintiff's said arrest which required more than one light on an automobile after night, and all the witnesses on both sides of this case, who testified on the subject of the number of lights on the plaintiff's car when plaintiff was arrested, agree that said automobile was provided with one headlight. The Court instructs you further that no officer in Tennessee has the right to arrest a person on a void charge or warrant which is void on its face, and that said warrant was void on its face for failing to set out an offense against the law at the time of its issuance and service upon the plaintiff.

"The Court further instructs you, Gentlemen of the Jury, that there is no conflict in the evidence as to who made the arrest in this case, but all of the witnesses who testified on this subject, say that the said arrest was made by one, J. F. Moore, a motorcycle policeman employed by the defendant, DuPont·Rayon Company, and commissioned as a deputy sheriff by the sheriff of Davidson County, upon the recommendation and at the request of the defendant, through its Chief of Police, William Brown; that if, for any reason, the Sheriff of David-

son County should refuse to deputize any of the defendant's operative peace officers, then the defendant would refuse to employ such person. Should the Sheriff of Davidson County revoke the commission of any person employed by the defendant, then the employment of such person by the defendant would cease.

"It is further shown in the evidence, and undisputed, that should any deputy sheriff employed by the defendant be discharged for any reason, then he should turn in his commission as deputy sheriff to Chief of Police, William Brown, who would surrender the same to the Sheriff of Davidson County.

"It is further shown in the evidence, and not controverted by any witness for the defendant, that its police force, including J. F. Moore, who made the arrest in this case, had the power and was authorized to protect the property of the defendant and preserve the peace and make arrests and to enforce the highway laws, and all other laws of the State of Tennessee on the property owned by the defendant and the surrounding territory. It is further shown in the evidence, and uncontradicted by any witness, that the defendant employed and paid the said J. F. Moore, the officer who made the arrest in this case; that the defendant furnished him with motorcycle and even ordered his uniform, which was to be eventually paid for by said Moore out of his salary.

"It is further shown by the undisputed evidence in the case that, at the time the said officer, J. F. Moore, arrested the plaintiff, he was working on his regular shift for and on behalf of the defendant, DuPont Rayon Company, and that at the time he swore out the warrant complained of in this case, he was acting in his usual capacity for the defendant.

*"The Court is, therefore, constrained to instruct you, Gentlemen of the Jury, that the said officer, J. F. Moore, was acting on behalf of the defendant and within the scope of his authority and duty at the time he arrested plaintiff and at the time he swore out the warrant in this case. The Court instructs you that the defendant is, therefore, liable in this case for some damages, the amount of which damages must be assessed by the Jury, under the instructions of the Court, as hereinafter set forth."*

It will be seen from the closing paragraph quoted, which we have italicized, that the Court left to the jury the question only of the amount of damages.

We have here a case of dual capacity, that is to say, the arresting officer was in the pay of the DuPont Company, and yet was a commissioned deputy of the sheriff. He was engaged to serve both, (1) for the protection of, and the keeping of peace and order on, the Company's property; and (2) for the performance of the duties of a peace and order officer generally in that section of County, including the service of criminal and civil process and making of all necessary arrests in the surrounding territory, and including specifically the public highways. The sheriff, Bob Briley, who commissioned the officer, testifies that he issued commissions to and took bond from these men paid by DuPont Company, that he required that the men deputized do general "field" work, and not be limited to the DuPont properties, that he "looked to Brown, (who was at the head of the Old Hickory force) to take care of the sheriff's office while he was DuPont's chief. I considered him my chief and I gave him all instructions."

He testified further:

Q. "What were your instructions to Mr. Brown, Sheriff, relative to the surrounding territory, and traffic running through Old Hickory, and so on, and the general situation out there?"

A. "Well, I gave him general instructions to enforce all laws, and I had occasion after that to call him in on some complaints I had, and gave him special instructions."

Q. "State whether or not you had complaints, or those complaints that you had related to the traffic on the Concrete Highway running through Old Hickory?"

A. "Yes sir."

Q. "Did you call him and give him some special instructions relative to that?"

A. "I did."

Q. "What were those instructions?"

A. "I called Brown in and told him he would have to take care of the traffic out there, stop speeding and violations of the law."

Q. "Told him he would have to take care of traffic and stop speeding and violations of the law?"

A. "Yes sir."

Q. "Did you ever call on Mr. Brown, or any of the other deputy sheriffs, specially, to go outside of the plant area?"

A. "Yes sir."

Q. "Where did you call on them to go, Sheriff?"

A. "Well, I had numerous complaints of bootlegging and distilleries outside of the plant and on one occasion a gambling house, and I called Brown and asked him to attend to it."

Q. "Was Brown subject to your orders?"

A. "Yes sir."

Q. "Were these other officers subject to your orders?"

A. "Yes sir."

Q. "Now, do you know whether or not the highway running through Old Hickory is a public highway or not?"

A. "The County taken that over, but I don't know just when; some time after the DuPont Rayon Company went in there."

Q. "I will ask you if it wasn't just about the time the DuPont Rayon Company came here, they took it over?"

A. "It may have been, I don't recall the time, but I knew the County taken it over."

Q. "It was a public highway during the latter part of your administration of your office, wasn't it?"

A. "Yes sir."

Q. "Was it or not a public highway along in April, 1928?"

A. "Yes."

Q. "Owned by the County and operated by the County?"

A. "Yes sir."

Q. "Kept by the County?"

A. "Yes sir."

Q. "I believe you stated that you had complaints about the traffic on that highway and communicated certain orders to Mr. Brown?"

A. "I had."

Moore, the officer who made the arrest, testified that, "my duties are as any other officer, peace officer, of the State and County."

Q. "What are those duties?"

A. "Well, preserve the peace and dignity of the community out there, arrest all criminals and violators, and

also we do civil work, such as replevin cars, people come from town out there and want to serve a replevin, warrants and stuff like that."

■ The question of liability for the wrongdoing of an officer serving in a dual capacity, that is, commissioned by a sheriff or police department, but compensated by private parties, with a view to special protection of private interests, is often a close one.

For plaintiff below reliance is had on our cases of *Terry* v. *Burford,* 131 Tenn., p. 451; *Eichengreen* v. *R. R.,* 96 Tenn., 229, and *R. R.* v. *Carter,* 129 Tenn., 463, wherein liability was adjudged. But, for the defendant Company it is insisted that the opinions in these cases recognize a distinction applicable here, that is, that the act complained of must have been, not only within the scope of the officer's employment, but in furtherance of the employer's business or interest, as distinguished from a duty to the public generally. The rule invoked for the DuPont Company is thus stated in LaBatt, on "Master and Servant," Vol. 6, 2d Ed., p. 7535:

"The circumstance that the given tort was not committed for the purpose of preserving the property of the defendant or otherwise protecting his interests, is apparently so far significant that, if the tort is shown to have been one of this character, a verdict imputing liability to the defendant, would usually be treated as unwarranted in every jurisdiction."

The language quoted states the difference of fact on which the cases appear to turn. If the wrongful arrest was made (the tort committed) "for the purpose of preserving the property of the defendant or otherwise protecting his interests," liability arises, otherwise not.

Applying this test to our cases above cited, it will be seen that in the Terry case the offending officer was engaged at the time in performance of a purpose to protect the private property of one of those by whom he was being compensated. So in the Eichengreen case. Was this true on the facts now presented? This arrest for an alleged violation of traffic rules on the public highway can hardly be said to have been made with a view to the furtherance of the DuPont Company's business, or the protection of its property. It is the duty, or "business," of the State and County officers exclusively to patrol and police the public highways. DuPont Company had only that interest in the enforcement of laws requiring lights on cars on the highway which the public generally and all users of the highway had. And this record clearly shows that these offending officers, while paid by the DuPont Company, and having the duty of protecting the property and interests of the Company, were commissioned by the sheriff with the express obligation to extend their services to performance of public duties entirely outside of and beyond this private field. They were obligated by their commissions to act generally in this section of the County as peace officers. In this wider field they are County officers, subject to and representatives of, the sheriff.

"The fact that his salary is paid by the one who nominated him does not make him the mere servant of the one who pays him nor affect his status as a police officer." 25 C. J., page 504, citing *Hershey* v. *O'Neil*, 36 Fed., 168; *Redgate* v. *So. Pac. Co.*, 24 Cal. A., 573, 141 P. 1191; *Bright* v. *Ga. Cen. R. R.*, 12 Ga. A., 364, 77 S. E., 372; *Tucker* v. *Erie R. Co.*, 69 N. J. L., 19, 54 A., 557;

*McKain* v. *Balt. etc. R. Co.*, 65 W. Va., 233, 64 S. E., 18, 131 Am. St. Rep., 964, 23 L. R. A. (N. S.), 289, 17 Anno. Cases, 634.

In cases generally of the employment of special officers, "Where the arrest is not made for an offense having any connection with preservation of the employer's business or property, it does not fall within the detective's implied authority, so as to render the employer liable." Idem. And that the arrest is not made on the premises of the employer is a circumstance against the conclusion that the officer was at the time acting as agent for an employer. Idem, page 505. And the general rule is thus stated in 39 C. J., p. 1273: "Unless it is otherwise provided by statute, a private person or corporation is not responsible for the acts of a special police officer, appointed by public authority, but employed by the private person or corporation, where the act complained of was performed in carrying out his duty as a public officer," citing many cases. This identical statement of the general rule is also made by the Annotator in 35 A. L. R., at page 681, many supporting cases being cited and reviewed.

In the instant case, this officer was (1) a regularly commissioned deputy sheriff with general authority to act as such and with instructions from the sheriff to enforce the law on the public highway, and (2) the alleged offense was not one against the property or business or particular interests of the DuPont Company, and (3) the alleged offense was not committed on the property of the DuPont Company. Under such conditions we are unable to approve the instructions given by the learned trial judge, and this assignment must be sustained.

By assignment II, complaint is made of the failure of the trial Court to sustain motions duly made for a directed verdict for the defendant. The views expressed in this opinion in discussion of the charge are conclusive of the right of recovery against DuPont Company, with the result that the motion to direct a verdict for the defendant must be sustained and the suit dismissed.