ALABAMA GREAT SOUTHERN RY. CO v. SMITH.—101 S. W. (2d) 484.

Eastern Section. Nov. 12, 1936.

Petition for Certiorari denied by Supreme Court, January 23, 1937.

Verdict directed for defendant.

Lynch, Bachman, Phillips & Lynch, of Chattanooga, for plaintiff in error.

Thach & Thach, of Chattanooga, for defendant in error.

PORTRUM, J.   One G. C. Carr, a crossing railroad flagman in the employ of the Alabama Great Southern Railway Company, and also a special policeman under the head of the Chattanooga police force, while on duty as a flagman shot and seriously injured the plaintiff, J. W. Smith, who had encountered Carr while Smith was upon the public street, and crossing the railroad track on foot, at a time when no trains were passing or approaching, making it incumbent upon the railway company to perform any duty in behalf of Smith.

The railway company maintains special officers deputized by legal authority under a special department or head, or director, and these officers are expected to and do police the railroad property and are paid by the railway company.  The railway company has the privilege and duty of selecting these men to act as special officers, making them a privileged class of public officials, in that they are selected by private interests, and for this reason the company is held responsible for the selection and employment of negligent, reckless, and unworthy persons.  This liability is well established and generally recognized, especially by the courts of Tennessee.  But the railroad company did not select G. C. Carr as a special officer, assigning him duties as such, but did employ him as a crossing flagman, with no police duties attaching to his position.  Said Carr obtained an appointment from the police department of the city of

Chattanooga upon his own initiative so far as this record shows, and in any event, as is shown by the record, without the knowledge of the railroad company, and he exercised his duties as a special policeman without the company's knowledge, consent or interest.

One time while off duty and off of the premises of the railway he arrested the plaintiff J. W. Smith, took him to a building, and there called the police wagon, and, while waiting for the wagon, Smith, under pretext of wanting to smoke, moved away from the officer and ran, when the officer Carr·drew his gun and was about to shoot at the said Smith, when he was restrained by the persons present for the reason that he would be certain to kill some innocent party, there being others in close proximity. The officer showed great excitement upon this occasion but was restrained.

Some time later Smith was passing over the crossing where Carr was employed as flagman, and Smith gives this version of what happened:

"He came out of the little shanty which the railroad has between the tracks and on the sidewalk, off the sidewalk a couple of feet, where the watchman stays, and he came out, and came into Rosswell Avenue, and asked me as I was crossing Rosswell Avenue, 'Ha, don't you want to see me?'" I said, 'Dad, I ain't got time to fool with you now, I have to go to my brother-in-law's.' He said, 'I think you do.' I didn't pay any more attention to him. He ran up behind me and grabbed me and when he turned me around he shot me in the left hip, I grabbed at my hip and he shot me in the head. That was the last I knew until the ambulance got me. The doctor told me he didn't think I would get over it."

He stated on cross-examination that he was shot near the spur track at O. B. Andrews' plant and that the shack was some distance from the O. B. Andrews' plant, perhaps 70 feet.. When this conversation took place between Carr and Smith, Carr went into the shack and procured a pistol and Smith had passed on over the crossing and onto the Andrews' property. Carr ran up behind him and shot him as Smith detailed, and as corroborated by other witnesses. Why he did this is unexplained by direct testimony, for Carr died before the trial. but there arises an inference from all the facts that Carr intended to arrest him as an escaped offender, and in the performance of his duty he became uncontrollable and attempted to kill Smith. Smith says he does not know why he was arrested in the first instance, and there is no proof that the arrest was made in the interest of the railway company or for the violation of any law upon its property. The company had not authorized Carr to make such an arrest, and did not know, or have means of knowing, that he was making arrests for the company. We cannot agree that the company had constructive knowledge of his appointment, because the appointment was a quasi public document. The company is not

onerated with the duty of making such a search, it is not within the line of its public service, and it is not contrary to public policy for the municipal department to employ special officers who only serve part time and who have duties to perform under private employment.

At the time of this assault the evidence establishes that Carr was performing no duty for the company, which he was required to perform under his employment, or a duty that was anyway beneficial to the company. The servant was not seeking to accomplish his master's purpose. He had stepped aside to perform a duty under another employment, acting as a special policeman for the City of Chattanooga.

There is no liability on the part of the railway company, and the trial judge should have directed the verdict upon the motion made at the conclusion of the evidence. The principle of this case is controlled by the recently reported cases of Hoover Motor Express Co., Inc., v. Thomas, 16 Tenn. App., 664, 65 S. W. (2d), 621; Du Pont Rayon Co. v. Henson, 162 Tenn., 394, 36 S. W. (2d), 879; Hunt-Berlin Coal Co. v. S. B. Paton, 139 Tenn., 611, 202 S. W., 935, and Terry v. Burford, 131 Tenn., 451, 175 S. W., 538, L. R. A., 1915F, 714.

The motion for a new trial is now sustained, and the verdict directed for the defendant, with costs.

Ailor and McAmis, JJ., concur.