192 N.J. Super. 412 (1983)
470 A.2d 50
SALVATORE VACIRCA, PLAINTIFF,
v.
CONSOLIDATED RAIL CORP., A PENNSYLVANIA CORP., JOHN DOE (A FICTITIOUS NAME), STATE OF NEW JERSEY, UNITED STATES CUSTOMS SERVICE, JAMES POE (A FICTITIOUS NAME), OFFICER OF THE HUDSON COUNTY PROSECUTOR, JOSEPH ROE (A FICTITIOUS NAME), DIV. OF ALCOHOLIC BEVERAGE CONTROL, AND JEFFREY TOE, (A FICTITIOUS NAME), DEFENDANTS.
Superior Court of New Jersey, Law Division Hudson County.
Decided November 7, 1983.
*414 Steven Menaker, for plaintiff (Miller & Menaker, attorneys).
Robert M. Turrin, Deputy Atty. Gen., for defendants (Irwin I. Kimmelman, Attorney General of New Jersey).
CASTANO, J.S.C.
Under what now is an established line of cases in New Jersey, a railroad may not be held vicariously liable for acts of railroad policemen committed when they are performing police-type functions even though at that time they are clearly employees of the railroad which pays their salaries and can fire them at will. See Trangone v. Penn Central Transp. Co., 176 N.J. Super. 506 (App.Div. 1980); Evanyke v. Electric Ferries Co., 106 N.J.L. 387 (E. & A. 1929); Taylor v. New York & c., R.R. Co., 80 N.J.L. 282 (E. & A. 1910); Sturla v. Central R.R. Co., of N.J., 4 N.J. Misc. 287 (Sup.Ct. 1926), aff'd 103 N.J.L. 507 (E. & A. 1926); Macknowski v. Hudson & Manhattan R.R. Co., 14 N.J. Misc. 778 (Sup.Ct. 1936); Dellabello v. Central R.R. Co., 99 N.J.L. 348 (Sup.Ct. 1923); Tucker v. Erie Ry. Co., 69 N.J.L. 19 (Sup.Ct. 1903).
The underlying rationale of those decisions is that a railroad policeman is responsible to the State, and not to the railroad, for *415 the way in which he conducts his police duties because he is acting under a statutory commission from the State. Trangone, supra, 176 N.J. Super. at 510; Evanyke, supra, 106 N.J.L. at 390; Taylor, supra, 80 N.J.L. at 284; Sturla, supra, 4 N.J. Misc. at 288; Macknowski, supra, 14 N.J. Misc. at 779; Tucker, supra, 69 N.J.L. at 21.
If the railroad is not liable vicariously when police duties are involved and the policemen are responsible to the State, then, the plaintiff reasons in this case, the State must be liable vicariously for their acts when they are performing police functions. And so, he has shaped the Trangone rationale into a claim against the State.
Plaintiff says he was the victim of an unlawful search by three railroad policemen who then failed to return his property. Under Trangone, he argues, the State is liable for the acts of those policemen.
The State, on the other hand, insists that the provisions of the Tort Claims Act, N.J.S.A. 59:1-1 et seq., and not plaintiff's interpretation of Trangone, determine its liability and that the cause of action plaintiff would seek to assert is totally unauthorized under the Tort Claims Act. The matter is before me on the State's motion for Summary Judgment which, in my view, must be granted.
Confusion on the subject has been generated by several of the cases which preceded Trangone and which, in the process of exculpating the railroad, referred to railroad policemen as "state officers." Taylor, supra, 80 N.J.L. at 284; Tucker, supra, 69 N.J.L. at 21.
Under the Tort Claims Act, the combined provisions of N.J.S.A. 59:2-2 and N.J.S.A. 59:1-3 affirm that a public entity is vicariously liable for the tortious acts or omissions of an officer *416 of that entity.[1] Since railroad policemen have been held to be state officers, the argument is made that the State then must be liable under N.J.S.A. 59:2-2 for the police acts.
Although facially seductive, that reasoning overlooks that all of the cases which refer to railroad policemen as "state officers" predated the Tort Claims Act. That language was employed at a time when there was sovereign immunity. Consequently, those courts could not possibly have had the concept of vicarious liability in mind in using the term "state officers."
It would appear that the term was utilized because railroad policemen were, and still are in fact, creatures of the State. They are appointed by the governor and the Superintendent of the State Police reviews their applications.[2] Within that limited *417 context, railroad policemen are certainly not county or municipal officials; they are state officials.
However, that "officialdom" does not equate with the requirements of N.J.S.A. 59:2-2 for imposing vicarious liability on a public entity. That section limits such vicarious liability to "injury proximately caused by an act or omission of a public employee within the scope of his employment...." [Emphasis supplied].
A public employee is defined in N.J.S.A. 59:1-3 to be "an employee of a public entity." Railroad policemen admittedly are not employees of the State. They are employees of the railroad. Therefore, the State cannot be held legally responsible for their acts under N.J.S.A. 59:2-2.
The Trangone language actually is not inconsistent with that result. Trangone merely refers to the responsibility of railroad policemen to the State. It does not necessarily follow that merely because the policemen are responsible to the State, which certificated them, that the State then becomes responsible to third parties for their acts. Neither Trangone nor its predecessors ever said that.
The argument is also made by plaintiff that even if the State is not vicariously liable, it is directly liable because it commissioned the three policemen. However the Tort Claims Act disposes of that contention too.
N.J.S.A. 59:2-5 cloaks the State with absolute immunity when an injury is alleged to have been caused by "... issuance ... of ... any permit, license, certificate, approval, order or similar authorization" by the State. The immunity granted by that section applies to all phases of the licensing function. Malloy v. State, 76 N.J. 515, 520 (1978). Certainly, the commissioning of the railroad police officers by the State is encompassed within the statutory category of "similar authorization."
The final argument of the plaintiff is that summary judgment should be denied because there is a factual dispute on *418 the issue of negligent supervision, control and training of the policemen by the State. However, there is no provision in the Tort Claims Act or in the railroad police statute which imposes an obligation upon the State to supervise, control or train railroad policemen either before or after they are commissioned and plaintiff has pointed to no legal authority which would require it. Since there is no legal duty to supervise, control and train, there can be no factual issue on the subject.
Summary judgment shall be entered in favor of the State of New Jersey.
NOTES
[1] N.J.S.A. 59:2-2 provides that a "public entity is liable for injury proximately caused by an act or omission of a public employee ..." [Emphasis supplied]. N.J.S.A. 59:1-3 states that the term "includes an officer, employee, or servant ... authorized to perform any act or service...."
[2] Railroad policemen exist by reason of N.J.S.A. 48:3-38, which provides:

On the application of any railroad, ... the Governor may appoint such persons as the company may designate to act as policemen for the company. He shall issue to each person so appointed a commission, a copy of which shall be filed in the officer of the Superintendent of state police.
All applications shall, in the first instance, be made to said superintendent. The superintendent shall investigate and determine the character, competency, integrity and fitness of the person or persons designated in the application.... If the application is approved by the superintendent, the applicant shall then present the approved application to the Governor.
Every person so appointed and commissioned shall, in the several counties, possess all the powers of policemen and constables in criminal cases of the several municipalities in such counties and shall be compensated by the company.
When on duty, except when employed as a detective, he shall wear in plain view a metallic shield or device with the words "railway police," ... and the name or style of the company for whom he was appointed inscribed thereon.
* * * * * * * *
When any such company shall file in the offices of the Superintendent of State Police a notice that it no longer requires the services of such policemen, his power as such shall cease and determine.