THOMAS SPENCER, PLAINTIFF IN ERROR, v. THE BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF HUDSON, DEFENDANT IN ERROR.

Submitted March 26, 1901—Decided June 17, 1901.

1. The board of chosen freeholders of a county are chargeable with the duty of erecting, rebuilding and repair of bridges, only where such bridges are necessary to carry a public highway across a stream or other like place, and which thereby becomes a part of such public highway, open to the free and unobstructed user thereof by the people at large, not upon sufferance, but as a matter of right.

2. An action for injuries suffered from neglect to erect, rebuild or repair a bridge, against the county, did not lie at the common law; and the statute of this state (*Gen. Stat., p.* 307, ¶ 9) giving a right of action in case of such failure of duty, expressly limits the liability of the county for such failure, to bridges, with the erection of which it is made chargeable by law.

3. The principle of estoppel, which has been held in some jurisdictions to prevent towns, which have general charge of public roads

and bridges, from making a defence to such actions on the ground of want of legal authority to erect the bridge, does not apply to such actions against counties in this state which have no general authority over the highways as such, and the acts of whose agents, in building bridges not authorized by statute, are *ultra vires*.

On error to the Hudson County Circuit.

For the plaintiff in error, *Edward Kenny*.

For the defendant in error, *John Griffin*.

The opinion of the court was delivered by

HENDRICKSON, J. This writ is brought to test the validity of a nonsuit granted at the Hudson Circuit.

The action was for personal injuries suffered by falling into an opening in a bridge or culvert. The alleged liability of the defendant was based on its neglect to repair a wash-out in a culvert which it had erected some years before in the town of Kearny, at the northerly end of John street. This culvert was erected across Kearny's brook, a dividing line between the lands of the Kearny estate and the Williams' property. The Williams' land lay south of the brook, and had been laid out into streets and divided into building lots some years before. Of these streets, John street ran to the brook and ended there.

The nonsuit was granted at the end of plaintiff's proof, because it appeared and was admitted that the bridge, although built and maintained by the defendant, was erected on private property and connected the end of John street with private lands of the estate of John Watts Kearny, lying north of the brook and extending to its southerly edge.

It thus appears that the bridge, although erected by the county, was no part of the public highway.

It had been erected, upon the petition of some of the citizens of Kearny, for the better convenience in reaching an outlying portion of the town, and had been used, to some extent, for several years by foot people and carriages.

They were allowed, after passing the culvert, to cross open,

unfenced lots of the Kearny estate, for about one thousand feet, to that portion of the town which had been laid out by the Kearny estate. But this part of the passageway had not become a public highway, either by laying out, dedication or public user.

The defendant resists this suit on the ground that, although its officers and agents erected and maintained this culvert, it was, in fact, no part of the defendant's duty to do so, and hence that it is not liable in this action.

It is well settled that no liability existed at common law for the non-repair of a bridge by the county, the only remedy being by indictment. *Freeholders of Sussex* v. *Strader,* 3 *Harr.* 108; 2 *Dill. Mun. Corp.* 728; *Cooley* v. *Essex,* 3 *Dutcher* 415; 2 *Am. & Eng. Encycl. L.* 558 and *note* 1; *Livermore* v. *Freeholders,* 2 *Vroom* 507; *Pray* v. *Jersey City,* 3 *Id.* 394; *Condict* v. *Jersey City,* 17 *Id.* 157.

This is also in accord with the overwhelming weight of authority elsewhere, the prevailing doctrine being that such liability can only arise from express statutory enactment or by implication necessarily arising therefrom. 7 *Am. & Eng. Encycl. L.* (2d ed.) 950. See, also, *Jasper County* v. *Allman, Administrator,* 142 *Ind.* 573.

This immunity from liability at the common law was first invaded by an act of the legislature passed in 1860, which regulates the liability of townships and counties for failure of duty with regard to the erection, rebuilding or repair of any bridges with the erection of which they are chargeable.

But such liability is expressly limited to cases "where a township or the board of chosen freeholders of a county are chargeable by law" with such erection, rebuilding or repairing. *Gen. Stat., p.* 307, ¶ 9.

The next inquiry, therefore, is, what is the limit of authority in the building of bridges by the chosen freeholders? Reason and authority both would seem to answer that they are limited to public bridges only, and such as become, when erected, a part of the public highway.

It is the recognized doctrine, both in England and in this country, that bridges, to be reparable by the county, must

be public bridges—that is, built in highways common to all the people. *Ang. High.*, § 257; *Whitall* v. *Freeholders of Gloucester,* 11 *Vroom* 302.

It is further held that the principal circumstances necessary to constitute a public bridge is that the people at large may have a free and uninterrupted user of it, not upon sufferance, but as a matter of right. *Woolr. Ways,* 196; *Ell. Roads & S. (2d ed.)* 30.

Public bridges are a part of the highway. 2 *Am. & Eng. Encycl. L.* 541; *Mahnken* v. *Freeholders of Monmouth,* 33 *Vroom* 404.

Upon the principles here stated, it is quite apparent that the culvert in question in this case was not, and could not be, a pubic bridge. Admittedly it was erected not as part of a public highway, because John street ended where the culvert began. It was erected upon and over private property of the Kearny estate.

But even granting that, which the facts do not seem to warrant, that John street extended to the north side of the brook and there ended, the northerly side of the brook being private property, would these conditions alter the character of the bridge? I think clearly not. The northerly abutments would be on private property, subject to interference or removal by the owner. To so hold would be in conflict with the principles laid down in the authorities above cited.

Further support of this view will be found in *People* v. *Kings County,* 151 *N. Y.* 190; 45 *N. E. Rep.* 453.

The question arose, upon a demurrer to a declaration, whether Maspeth avenue, upon which the bridge in question was built, was a public highway. "This was an essential fact," said the judge in delivering the opinion, "for the reason that the liability of towns or counties to construct bridges over waters dividing them only exists where there is a lawful highway, which would be connected thereby and of which the bridge would form a part."

*In re People* v. *Supervisors,* 47 *Ill.* 256, it was held that to authorize such exercise of municipal power the bridge must be some portion of some legally-constituted highway.

The same principle is recognized in the following cases:

*Washer* v. *Bullitt County,* 110 *U. S.* 558; 4 *Sup. Ct. Rep.* 249; *McKinley* v. *Freeholders of Union County,* 2 *Stew. Eq.* 164; *Beatty* v. *Titus,* 18 *Vroom* 89, 91.

It is contended by the plaintiff in error that this ruling is not universal, and that the principle of estoppel applies, citing *Houfe* v. *Town of Fulton,* 34 *Wis.* 608; affirmed by Supreme Court.

In this case an action for injuries caused by defects in a bridge was sustained. . The town defended on the ground that it had not legal authority to erect the bridge.

This defence was overruled, on the ground stated by the court, that, as to matters within the scope of the powers of the officers of municipal corporations, the doctrine of estoppel will apply the same as to natural persons; that the establishment of public roads and bridges was within the scope of the general powers of the town and its officers.

This case might be distinguished from the one under consideration on the ground that in the former it was a town having general charge of the highways, including bridges, while in this it is a county without any charge of the highways as such.

In addition to this, it will be recalled that, with regard to civil liability, a distinction was early recognized, at least in some jurisdictions, between municipal corporations proper, such as incorporated villages, towns and cities, with power of local administration, and those involuntary *quasi* corporations, such as counties whose principal powers and functions relate to the general policy of the state and its administration. 1 *Dill. Mun. Corp.* 22, 23.

In this state the principle has been established by repeated decisions, notably in *Livermore* v. *Freeholders,* 2 *Vroom* 507, that an action, unless given by statute, will not lie in behalf of an individual who has sustained special damage by reason of the neglect of a public corporation to perform a public duty. It would seem to be clear, therefore, that the Wisconsin case and others cited by the defendant in error in this same line are not authority upon the point in question in this state.

And where the act is *ultra vires* it has been held that the case is not within the principle stated in the Wisconsin case. *Sewell* v. *Cohoes,* 75 *N. Y.* 45.

Another case in point is that of *Shelby County* v. *Blair,* 36 *N. E. Rep.* 216; 8 *Ind. App.* 574, where the court said: "We do not pretend to hold that the county can be held liable for failing to keep in repair a bridge which it may have assumed charge of simply because it assumed the responsibility of keeping it in repair. It is not within the power of the county, through its officers, to create such a liability, for the liability exists, for a breach of duty which can be imposed only by positive statute." See, also, *Covington County* v. *Kinney,* 45 *Ala.* 176; *Sims* v. *Butler County,* 49 *Id.* 110.

In construing this statute, which creates a liability that did not exist at common law, it should be remembered that grants of power to municipal and public bodies, which are out of the usual range, or which may result in public burdens, are to be construed with reasonable strictness. They are, at least, not to be construed beyond their fair and reasonable meaning. 1 *Dill. Mun. Corp.* 91.

And certainly the plain, fair meaning of the statute creating the liability in question limits it to cases of defects in bridges with the erection of which the county freeholders are chargeable by law. It follows, therefore, that if some of the officers or agents of the board have neglected their duty and have acted *ultra vires* by erecting bridges, for the erection of which no duty was cast upon the county board, then the county municipality cannot be held.

The result is that the proofs at the close of the plaintiff's case showed no legal cause of action against the defendant.

The judgment for nonsuit was therefore correct, and should be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, VAN SYCKEL, DIXON, GARRISON, GUMMERE, COLLINS, FORT, GARRETSON, HENDRICKSON, BOGERT, ADAMS, VREDENBURGH, VOORHEES, VROOM. 15.

*For reversal*—None.