732 A.2d 524 (1999)
323 N.J. Super. 111
Paul J. ROHALY, Plaintiff-Appellant,
v.
The STATE of New Jersey, DEPARTMENT OF ENVIRONMENTAL PROTECTION AND ENERGY, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted June 8, 1999.
Decided June 22, 1999.
*525 Stein & Stein, Succasunna, for plaintiff-appellant (Mitchell R. Stein, on the brief).
John J. Farmer, Jr., Attorney General, for defendant-respondent (Joseph L. Yannotti, Assistant Attorney General, of counsel; Mark Oshinskie, Deputy Attorney General, on the brief).
Before Judges, MUIR, Jr., EICHEN and COBURN.
The opinion of the court was delivered by EICHEN, J.A.D.
This is an inverse condemnation case. Plaintiff filed a complaint for damages on June 22, 1994, based on claims of trespass; a taking without just compensation, "pursuant to N.J.S.A. 20:3-5"; and wilful and malicious conduct. The claims stem from the installation of three groundwater monitoring wells by the Department of Environmental Protection (DEP) in 1987 on industrial property located in the Township of Rockaway. Plaintiff contends the installation of these wells constitute an unconstitutional taking of his property for which he is entitled to just compensation.
Plaintiff acquired the property from an estate for $6,000 on June 16, 1988, after the wells were already in place. They were installed to assess the extent of ground water contamination that had been detected near the property. The property consists of a small, undeveloped vacant lot, 83 feet by 98.90 feet, located in a state-designated flood zone. Plaintiff contends the lot was overgrown with vegetative material when he acquired title and, therefore, he was unaware of the wells until he cleared the vegetation. Plaintiff also contends he purchased the lot to park buses but was unable to do so because "the location of the wells made it impossible to maneuver [the] vehicles in and out of the lot." The record reflects plaintiff used the lot to store construction/excavation equipment and materials and to display a used car "for sale" sign. The DEP contends the wells were "mere metal pipes" located at the rear of the property and were "no more than 8" in diameter and no more than 3' high."
Plaintiff asserts that he tried to get the DEP to remove the wells for five years but was "the victim" of "an ongoing bureaucratic runaround." The DEP counters that it was willing to remove the wells but could not gain access to the site because of plaintiff's lack of cooperation. The record reflects that in 1995 a jointly selected MAI appraiser valued the taking at $33,200.[1]
On December 19, 1995, the Law Division denied the DEP's motion for summary judgment and ordered the DEP to seal the wells and restore the surface of the property to its prior condition. In 1996, the DEP sealed the wells. The record does not specifically describe the wells or indicate *526 whether the surface was restored to its original condition.
On July 10, 1998, after the parties stipulated to submit the matter for trial on the papers, a different Law Division judge dismissed the complaint and entered judgment in favor of the DEP. The trial court found that plaintiff's loss, if any, was due to his failure to make adequate inquiry when he acquired title to the property. Applying the decisional rationale of Pinkowski v. Township of Montclair, 299 N.J.Super. 557, 576, 691 A.2d 837 (App. Div.1997), the court determined that the wells did not substantially impair the use of the property and that the effect of the presence of the wells was "minimal" and "temporary." We reverse.
"Both article I, paragraph 20 of the New Jersey Constitution and the fifth and fourteenth amendments to the United States Constitution prohibit the government from taking property without paying just compensation. The protections afforded under both constitutions are coextensive." Littman v. Gimello, 115 N.J. 154, 161, 557 A.2d 314 (citation omitted), cert. denied, 493 U.S. 934, 110 S.Ct. 324, 107 L.Ed.2d 314 (1989).
"Inverse condemnation is a remedy designed to protect a landowner whose property has been taken ... by insuring that he be paid reasonable compensation...." In re Jersey Central Power & Light Co., 166 N.J.Super. 540, 544, 400 A.2d 128 (App.Div.1979). The Eminent Domain Act, N.J.S.A. 20:3-1 to -50, is the vehicle through which a landowner may seek condemnation and just compensation. See Ibid. There are several types of "takings" requiring just compensation to be paid to a landowner. Littman, supra, 115 N.J. at 161, 557 A.2d 314 (discussing takings involving the physical invasion of land as distinguished from takings due to government regulation); see also Schiavone Constr. Co. v. Hackensack Meadowlands Dev. Comm'n, 98 N.J. 258, 486 A.2d 330 (1985).
In Pinkowski, supra, plaintiff was prevented from developing his property due to a natural water course the Township of Montclair had encased in an underground cement culvert or pipe. 299 N.J.Super. at 565-66, 691 A.2d 837. We concluded that lack of diligence at the time of acquisition of title caused plaintiff to fail to discover the natural water course and that the Township was not accountable for his loss because of the cement culvert or pipe. Id. at 575-76, 691 A.2d 837. In so doing, we discussed the standard that applies to a regulatory taking, rather than a physical taking. Ibid.
Applying this rationale from Pinkowski, the trial court mistakenly concluded the installation of the wells by the DEP involved a regulatory taking condemnation case rather than a physical invasion case and applied the wrong standard for evaluating plaintiff's entitlement to compensation.
In a physical invasion case, the law is clear that the size of the invasion does not affect the owner's right to compensation. See Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419, 429-30, 102 S.Ct. 3164, 3172-73, 73 L.Ed.2d 868, 878 (1982) observing that "permanent occupations of land by such installations as telegraph and telephone lines, rails, and underground pipes or wires are takings even if they occupy only relatively insubstantial amounts of space and do not seriously interfere with the landowner's use of the rest of his land").
Further, a "taking" that predates the ownership of land apparently is not an impediment to a subsequent owner's right to seek redress through an inverse condemnation action. See ibid.; see also Nollan v. California Coastal Comm'n, 483 U.S. 825, 833 n. 2, 107 S.Ct. 3141, 3147 n. 2, 97 L.Ed.2d 677, 687 n. 2 (1987) ("[T]he prior owners must be understood to have transferred their full property rights in conveying the lot."); East Cape May Assocs. v. State, 300 N.J.Super. 325, 337, 693 *527 A.2d 114 (App.Div.1997); ("East Cape May is entitled to assert whatever development rights its predecessors would have had.").
In Juliano v. Montgomery-Otsego-Schoharie Solid Waste Management Authority, 983 F.Supp. 319, 328-29 (N.D.N.Y. 1997), the Federal District Court of New York applied the rationale of Loretto to find that the owner suffered a "taking" because of sealed monitoring wells left on the property by the government. Juliano is instructive in analyzing whether a taking has occurred in this case. There, the property owners filed suit seeking just compensation for monitoring wells and piezometers [2] remaining on their property after it was tested as a possible landfill site. Id. at 322-23. The federal district court held that the physical occupation of the land was a "taking," even if the well casings and piezometers occupied only relatively insubstantial amounts of space and did not seriously interfere with the owners' use of the remainder of the land. Id. at 328-29. Concluding that the monitoring wells and piezometers remaining on the property amounted to "permanent physical occupation" for which just compensation was required, it left for trial the issue of the amount of compensation due. Id. at 328 (emphasis added). Relying on Loretto v. Teleprompter Manhattan CATV Corp., supra, the Juliano court stated in relevant part:
[I]f government action constitutes a permanent physical occupation of property, there is "a taking to the extent of the occupation, without regard to whether the action achieves an important public benefit or has only minimal economic impact on the owner." Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419, 434-435, 102 S.Ct. 3164, 3175, 73 L.Ed.2d 868 (1982). This type of taking, requiring courts to apply a per se rule, has been termed a "physical taking," and stands in contrast to the fact-intensive balancing accompanying a judicial determination of whether a "regulatory taking" has occurred. See, e.g., Penn Central Transportation v. City of New York, 438 U.S. 104, 124, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631 (1978).
* * * *
[However,] [n]ot every physical invasion is a taking.... [T]emporary limitations are subject to a more complex balancing process to determine whether they are a taking. The rationale is evident: they do not absolutely dispossess the owner of his rights to use, and exclude others from, his property. [Loretto,] 458 U.S. at 436 n. 12, 102 S.Ct. at 3176 n. 12; see also Sanguinetti v. United States, 264 U.S. 146, 149, 44 S.Ct. 264, 265, 68 L.Ed. 608 (1924) (taking must "constitute an actual, permanent invasion of the land, amounting to an appropriation of and not merely an injury to the property").
[983 F.Supp. at 324, 327-28 (fourth alteration and ellipsis in original).]
Based on the very detailed description of the defendant's activities on plaintiffs' property and the evidence of permanence presented, the Juliano court concluded that the monitoring wells were permanent, entitling plaintiffs to just compensation.
Applying the foregoing principles here, we conclude the court erred in concluding the installation of the wells did not require compensation because the loss was de minimis and because plaintiff took title after the installation and should have discovered their presence on the property. However, on this meager record, we are unable to determine whether the DEP's activities constitute a "permanent physical occupation" entitling plaintiff to compensation. The record here reflects that the DEP simply "sealed" the wells. We do not know whether it restored the surface of the property as required by the order *528 denying summary judgment on December 19, 1995. We also are left to speculate concerning the nature of the installations themselves and the manner of their sealing. Without this evidence, a decision on permanence is not possible. See Juliano, supra, 983 F.Supp. at 326-28; see also Hendler v. United States, 952 F.2d 1364, 1375-77 (Fed.Cir.1991).
Accordingly, we reverse and remand to the trial court for trial on the issue of permanence and for a determination of the amount of compensation due to plaintiff if a "taking" is established. We do not retain jurisdiction.
Reversed and remanded for further proceedings consistent with this opinion.
NOTES
[1] We express no opinion concerning whether the valuation is supportable.
[2] A piezometer is an instrument for measuring pressure. Webster's Third New International Dictionary 1713 (1971).