813 A.2d 591 (2003)
356 N.J. Super. 518
Patrick COSGROVE, Plaintiff-Appellant,
v.
CRANFORD BOARD OF EDUCATION, Thomas Stokes, William Cashman, and Emalene F. Renna, Superintendent of Schools, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued December 16, 2002.
Decided January 14, 2003.
*593 Fred Shahrooz Scampato argued the cause for appellant.
David B. Rubin argued the cause for respondents.
Before Judges PETRELLA, LINTNER[1] and PARKER.
*592 The opinion of the court was delivered by PETRELLA, P.J.A.D.
Plaintiff Patrick Cosgrove appeals from a summary judgment order that dismissed his whistle blower claim under the Conscientious Employee Protection Act (CEPA). His complaint had originally challenged several employment actions taken by the Cranford Board of Education (Board) and supervisory employees and alleged age discrimination in violation of the New Jersey Law Against Discrimination (LAD) as well as several common law claims.[2]
On appeal Cosgrove argues that the judge erred in concluding that he failed to provide a specific law or regulation which the Board violated in connection with his CEPA claim. He argues that summary judgment was erroneously granted because there were disputed issues of fact and because he was retaliated against for utilizing a union grievance process when he complained about distribution of overtime.
Cosgrove was appointed by the Board as a substitute custodian effective March 26, 1996, at an hourly rate of $10.50.[3] His employment was converted to full-time as of June 10, 1997, for the balance of the 1996-1997 school year, at an annualized *594 salary of $23,904, corresponding to Scale C-2, Step 2 of the custodial salary guide in the operative collective negotiations agreement between the Board and the Cranford Education Association.
On July 9, 1997, Cosgrove was subsequently issued another contract of employment for the 1997-1998 school year at an annualized salary of $24,490. The contract provided in pertinent part:
Employment of nontenured personnel may be terminated without cause by either party upon a one month written notice of intent to terminate. One month's written notice of intent to terminate may be waived and/or modified by mutual consent.
In November of 1997, Cosgrove complained to his supervisor, Stokes, that he was never given the opportunity for premium overtime, i.e., Sunday overtime, for which double time is paid. Cosgrove also claimed that most of the overtime opportunities were distributed between three other custodians. Cosgrove asserts that the supervisor became angry with him for making these complaints.
Cosgrove said he was told in December 1997, by Charles Kiami, the president of his union, that he had been labeled as a "trouble maker" by Stokes. Cosgrove also stated that a supervisor custodian told him that "he would be history" if he filed a grievance. Despite these statements, Cosgrove and another custodian filed a complaint with the union. A settlement was reached requiring overtime to be distributed on a rotating basis.
After the grievance, Cosgrove claims that he was held to a higher standard than anyone else in the school district and was frequently on the receiving end of unwanted criticism, particularly from Stokes.
On April 30, 1998, a written performance evaluation covering the first ten months of the 1997-1998 school year by Stokes rated Cosgrove as "Satisfactory" in seven areas, but as "Needs Improvement" in nine areas. Nonetheless, Stokes recommended that Cosgrove be re-employed for the following school year, and that he receive a salary increment. On May 19, 1998, Cosgrove signed another contract of employment for the 1998-1999 school year, at an annualized salary of $25,531, containing the same termination clause as the previous one.
On April 29, 1999, Stokes submitted a performance evaluation for Cosgrove for the first ten months of the 1998-1999 school year indicating that Cosgrove only showed improvement in one of the nine categories rated "Needs Improvement" from the prior year's evaluation, and one of the categories that had been rated "Satisfactory" in the prior evaluation was now rated "Needs Improvement". As a result, Stokes did not recommend him for reemployment for the 1999-2000 school year.
After Cosgrove's employment ended at the conclusion of the 1998-1999 school year, he successfully found new employment with the Westfield School District as of February 2000, where he remains employed.

I.
The Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-3c(1) and -3c(3), provides in pertinent part:
An employer shall not take any retaliatory action against an employee because the employee does any of the following:

....
c. Objects to, or refuses, to participate in any activity, policy or practice which the employee reasonably believes:
*595 (1) is in violation of a law, or a rule or regulation promulgated pursuant to law...; [or] ...
(3) is incompatible with a clear mandate of public policy concerning the public health, safety, or welfare or protection of the environment.
When a CEPA claim is brought under these sections, the judge "must first find and enunciate the specific terms of a statute or regulation, or the clear expression of public policy, which would be violated if the facts alleged are true." Gerard v. Camden County Health Servs. Ctr., 348 N.J.Super. 516, 521, 792 A.2d 494 (App. Div.), certif. denied, 174 N.J. 40, 803 A.2d 636 (2002) (citing Fineman v. New Jersey Dep't of Human Servs., 272 N.J.Super. 606, 620, 640 A.2d 1161 (App.Div.), certif denied, 138 N.J. 267, 649 A.2d 1287 (1994)). A plaintiff invoking a CEPA claim is not required to have "[s]pecific knowledge of the precise source of public policy" so long as the court may identify the law or public policy that might have been violated by the challenged conduct. Mehlman v. Mobil Oil Corp., 153 N.J. 163, 193-196, 707 A.2d 1000 (1998). The court, however, need not consider whether plaintiff has sufficient evidence to support a finding that he or she "reasonably believed" defendant's conduct violated a statute, rule, regulation, or public policy unless the judge has first identified the same. Id. at 181, 707 A.2d 1000. This threshold identification is a question of law to be decided by the judge before a CEPA claim is submitted to a jury. Id. at 187, 707 A.2d 1000.
"Sources of public policy include the United States and New Jersey Constitutions; federal and state laws and administrative rules, regulations and decisions; the common law and specific judicial decisions; and in certain cases, professional codes of ethics." MacDougall v. Weichert, 144 N.J. 380, 391, 677 A.2d 162 (1996) (citation omitted). "A vague, controversial, unsettled, or otherwise problematic public policy does not constitute a clear mandate." Id. at 392, 677 A.2d 162. Although the above list is not exclusive, a limiting factor is that the alleged activity must represent a public harm rather than a private harm or a harm only to the aggrieved employee. Mehlman, supra, 153 N.J. at 188, 707 A.2d 1000 (citation omitted).
In his oral decision, Judge Pisansky reasoned that:
In reviewing the plaintiff's brief in opposition to the summary judgment motion, counsel for plaintiff addresses his argument on the fact, "That the plaintiff complained repeatedly about the unfair way in which overtime was being distributed," and that Mr. Cosgrove and another employee were successful upon the filing of the grievance. However, plaintiff fails to cite to any specific law to which he believes the employer was in violation of in relation to overtime in order for this Court to conduct an analysis.
Based upon the plaintiffs failure to cite a specific law or regulation and a ruling in Schechter [sic], this Court will not consider the rest of plaintiffs allegations in relation to his CEPA claim, and summary judgment on this point is also granted.
Relying on Mehlman. supra, 153 N.J. 163, 707 A.2d 1000, Cosgrove contends that he was not required to show the specific overtime law that may have been violated in order to proceed with his CEPA claim. He also asserts that he was protected under the strong public policy against discrimination and retaliation against a person who files a grievance through his or her union. Cosgrove refers to the Employer-Employee Relations Act, N.J.S.A. *596 34:13A-1, et seq., for the proposition that "it is a long standing policy in this state that public employees are to be insured freedom from restraint, interference, coercion, discrimination or reprisal for presenting grievances through his or her union." In relevant part, N.J.S.A. 34:13A-5.4(a)(4) prohibits public employers, such as a school district, from discriminating against or discharging any employee because he has filed a complaint with his union.
Cosgrove is correct that he is not required to show the specific overtime law that may have been violated in order to proceed with his CEPA claim. However, even at this date he has not asserted any law or regulation that might have been violated by the school district's method of distributing overtime to its custodians. Moreover, a complaint regarding overtime distribution concerns a personal harm rather than the public harm required under section 3(c)(3) of CEPA. See Mehlman, supra, 153 N.J. at 188, 707 A.2d 1000.
Cosgrove's additional assertion that his claim invokes the strong public policy preventing discrimination against employees, particularly public employees, who file complaints with their unions confuses the threshold issue. In making the threshold determination under N.J.S.A. 34:19-3(c)(3) of whether a plaintiff has identified "a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment," the focus is on the underlying employer "activity, policy, or practice" that triggers the employee's objection or refusal to participate. The focus is not on the method by which the employee chooses to assert a grievance or complaint, which here was resolved in favor of Cosgrove's argument by a settlement. See N.J.S.A. 34:19-3(c). Cosgrove's complaint concerned a personal objection to the alleged unfair distribution of overtime, not the procedure for filing complaints through his union. The alleged unfair distribution of overtime is not a practice involving a clear mandate of public policy as contemplated by the statute. See N.J.S.A. 34:19-3(c)(3). Accordingly, such a complaint is not cognizable under CEPA, and summary judgment was properly granted in favor of defendants. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995); and Pinkowski v. Township of Montclair, 299 N.J.Super. 557, 566, 691 A.2d 837 (App.Div.1997). See R. 4:46-2(c).
Because Cosgrove failed to satisfy the threshold requirement of a CEPA claim that he identify a statute, rule, or regulation or other statutorily specified clear mandate of public policy underlying his complaint, we need not consider his additional allegations regarding his CEPA claim.
We also note that the Board had ample reasons for terminating Cosgrove based on his evaluations. As Judge Pisansky noted, Cosgrove's disagreement with the evaluations of his performance does not demonstrate a pretext for discharging him, nor establish a prima facie case for retaliation or wrongful discharge. We agree with Judge Pisansky that the record clearly established that Cosgrove did not perform his job satisfactorily.
We affirm substantially for the reasons expressed by Judge Pisansky in his December 7, 2001 oral opinion.[4]
NOTES
[1] Judge Lintner did not participate in oral argument. However, the parties consented to his participation in the decision.
[2] Appellant did not brief these issues on appeal. They can be considered waived. Liebling v. Garden State Indem., 337 N.J.Super. 447, 465-466, 767 A.2d 515 (App.Div.), certif. denied, 169 N.J. 606, 782 A.2d 424 (2001) (citation omitted); and see Pressler, Current N.J. Court Rules, comment on R. 2:6-2 (2002). He also stated that his only issue on appeal is the CEPA claim.
[3] Judge Pisansky extensively set forth the facts in his decision on the motion for summary judgment.
[4] We recognize that there are some rather obvious mistranscriptions by the sound recording transcriber, such as substitution of the word "perpetual" where what was obviously meant was "pretextual," but those errors did not impair our review.