NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-3047
_____

In Re:  106 NORTH WALNUT, LLC,

Debtor

v.

106 NORTH WALNUT, LLC

v.

CITY OF EAST ORANGE,

Appellant
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 3-08-cv-04221)
District Judge:  Honorable Garrett E Brown, Jr.
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 23, 2011

Before:  FISHER, HARDIMAN and GREENAWAY, JR., *Circuit Judges*.

(Filed: October 6, 2011 )
_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

106 North Walnut, LLC ("Debtor") appeals from an order of the U.S. District Court for the District of New Jersey reversing the Bankruptcy Court's determination that the demolition of a building on Debtor's property did not constitute inverse condemnation. For the reasons stated below, we will reverse the order of the District Court and reinstate the order of the Bankruptcy Court.

I.

We write exclusively for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

In October 2002, a fire damaged the upper floor and roof of an apartment building located at 106 North Walnut Street in East Orange, New Jersey. As a result of the fire, the City of East Orange ("City") issued a Notice of Unsafe Structure and Notice of Imminent Hazard. On March 17, 2003, Debtor acquired the property and hired a contractor to renovate the building and fix the fire damage. Over the next six months, Debtor replaced the building's roof and began installing new walls and framing.

In February 2004, the City adopted the North Walnut Street Redevelopment Plan ("Redevelopment Plan"), which designated the area in which Debtor's property was located as in need of redevelopment. Believing that condemnation of the property was imminent, Debtor placed the renovation work on hold. In May 2004, City officials

informed Debtor's counsel that the property was subject to acquisition and demolition, and that a redeveloper would be selected for the property. Subsequently, however, on November 1, 2004, Ronald Kleckley, the City's Assistant Corporation Counsel, told Debtor's attorney that the City did not have any immediate plans to condemn the property and that Debtor was free to proceed with its rehabilitation efforts. Three days later, on November 4, 2004, Debtor's attorney faxed a letter to Kleckley memorializing the November 1 conversation. Kleckley showed the letter to Lloyd Raheem, the City's Construction Official, who informed him that the City was going to demolish the building at 106 North Walnut Street. At approximately 8:00 p.m. that night, without inspecting the interior of the building or taking other required precautions to ensure a safe demolition, Raheem instructed a contractor to begin demolishing the structure. The building was completely demolished and the lot remains vacant.

Debtor subsequently filed for bankruptcy under Chapter 11 and instituted an adversary proceeding in Bankruptcy Court, seeking to impose liability on the City for the demolition under alternative theories of inverse condemnation, intentional, arbitrary, and capricious conduct, and negligence. After conducting a trial, the Bankruptcy Court determined that the manner in which the City undertook the demolition was negligent, but concluded that Debtor had not established its claims for inverse condemnation or intentional, arbitrary, and capricious conduct. On appeal, the District Court reversed the Bankruptcy Court's decision as to inverse condemnation, finding that the City had

3

deprived Debtor of "substantially all of the beneficial use" of its property. The City filed a timely notice of appeal. Because the District Court left undisturbed the Bankruptcy Court's determination that the City was negligent, this appeal deals only with the inverse condemnation claim.

## II.

The Bankruptcy Court had jurisdiction under 28 U.S.C. § 157(b) and § 1334, and the District Court had jurisdiction to review the final decision of the Bankruptcy Court under 28 U.S.C. § 158(a). We have jurisdiction under 28 U.S.C. § 158(d). We exercise plenary review over the District Court's conclusions of law. *In re Tower Air, Inc.*, 397 F.3d 191, 195 (3d Cir. 2005) (citing *In re Prof'l Ins. Mgmt.*, 285 F.3d 268, 282-83 (3d Cir. 2002)). "Exercising the same standard of review as the District Court, '[w]e review the bankruptcy court's legal determinations *de novo*, its factual findings for clear error and its exercise of discretion for abuse thereof.'" *In re Gen. DataComm Indus., Inc.*, 407 F.3d 616, 619 (3d Cir. 2005) (quoting *In re Trans World Airlines, Inc.*, 145 F.3d 124, 130-31 (3d Cir. 1998)). "For mixed questions of law and fact, we will engage in 'a mixed standard' of review, 'affording a clearly erroneous standard to integral facts, but exercising plenary review of the lower court's interpretation and application of those facts to legal precepts.'" *In re Exide Techs.*, 607 F.3d 957, 962 (3d Cir. 2010) (quoting *In re CellNet Data Sys., Inc.*, 327 F.3d 242, 244 (3d Cir. 2003)).

III.

"Both article I, paragraph 20 of the New Jersey Constitution and the [F]ifth and [F]ourteenth [A]mendments to the United States Constitution prohibit the government from taking property without paying just compensation." *Littman v. Gimello*, 557 A.2d 314, 317-18 (N.J. 1989). "The protections afforded under both constitutions are coextensive." *Id.* at 318 (citation omitted). Although "the typical taking occurs when the government acts to condemn property in the exercise of its power of eminent domain, the entire doctrine of inverse condemnation is predicated on the proposition that a taking may occur without such formal proceedings." *First English Evangelical Lutheran Church v. County of Los Angeles*, 482 U.S. 304, 316 (1987). "The term 'inverse condemnation' is essentially 'a short-hand description of the manner in which a landowner recovers just compensation for a taking of his property when condemnation proceedings have not been instituted.'" *Peduto v. City of North Wildwood*, 878 F.2d 725, 728 n.4 (3d Cir. 1989) (quoting *United States v. Clarke*, 445 U.S. 253, 257 (1980)). A property owner is only entitled to recover, however, if the government action "deprived [him] of all or substantially all of the beneficial use" of the property. *Pinkowski v. Twp. of Montclair*, 691 A.2d 837, 845 (N.J. Super. Ct. App. Div. 1997) (citation omitted).

In this case, the District Court held that the totality of the circumstances, including the location of Debtor's property in the redevelopment zone, the City's delay in implementing the Redevelopment Plan, and the demolition of the building, worked to

5

deprive Debtor of all economically beneficial use of the property. In reaching this conclusion, the District Court noted that "a declaration of blight," by itself, does not constitute a taking, but when "other related activities together with the passage of time" combine to eliminate the property's economic value, a property owner is entitled to compensation under the doctrine of inverse condemnation. *Washington Mkt. Enters. v. City of Trenton*, 343 A.2d 408, 412 (N.J. 1975). The District Court erred, however, because the demolition in this case was completely unrelated to the Redevelopment Plan. The Bankruptcy Court explicitly found that Raheem was acting pursuant to his duties as a construction official, "motivated by a desire to abate an unsafe condition and public eyesore."[1] Raheem's communication with other City officials regarding the Redevelopment Plan was limited, and the record simply did not support a finding that Raheem acted to further the plan, rather than to ensure public safety. We must defer to these factual findings unless they are clearly erroneous. *See In re Gen. DataComm*, 407 F.3d at 619.

Because we conclude that the Bankruptcy Court's determinations on this point are adequately supported by the record, they are not clearly erroneous and cannot be disturbed on appeal. Ultimately, these factual findings are dispositive. Although the District Court is correct that courts must evaluate whether the elements of inverse

---

[1] In addition to being in poor structural condition, the building at 106 North Walnut Street was open at the doors and windows, allowing access to prostitutes, drug addicts, and vagrants.

6

condemnation are met from an objective perspective, where, as here, an unsafe structure is demolished based on the separate and legitimate purpose of promoting public safety, compensation under the Takings Clause is not available. *See City of Paterson v. Fargo Realty, Inc.*, 415 A.2d 1210, 1212 (N.J. Super. Ct. Law Div. 1980) (citing *Rosenberg v. Sheen*, 77 A. 1019, 1019 (N.J. Ch. 1910)).

The Fifth Amendment "is designed not to limit the governmental interference with property rights per se, but rather to secure compensation in the event of [a taking]." *First English*, 482 U.S. at 315. Accordingly, "[a] municipality may, in the exercise of its police power, without compensation destroy a building or structure that is a menace to the public safety or welfare, or require the owner to demolish the dangerous piece of property." *City of Paterson*, 415 A.2d at 1212 (citation omitted). In such a situation, an inverse condemnation action is not available.[2] Here, Raheem acted to ensure public safety; it is irrelevant that the property happened to be in a redevelopment zone. On these facts, there is simply no basis for a finding of inverse condemnation. Thus, the District Court erred in concluding that Debtor was entitled to compensation for a "taking."

Furthermore, even if an inverse condemnation action were available, Debtor was not "deprived of all or substantially all of the beneficial use" of its property. *See Pinkowski*, 691 A.2d at 845. Not every impairment in property value caused by

_____

[2] This is not to say that the government is immune from liability when it acts pursuant to its police power. Where, as here, the government is negligent, it will be liable for any damage proximately caused by its negligence.

government action constitutes a taking. *See Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 131 (1978). "[E]ven a substantial reduction of the attractiveness of the property to potential purchasers" generally "does not entitle the owner to compensation under the Fifth Amendment." *Kirby Forest Indus., Inc. v. United States*, 467 U.S. 1, 15 (1984). Here, the Bankruptcy Court found that the vacant property was worth $525,000 as of the date of the demolition. The Bankruptcy Court found no evidence that the City prevented Debtor from rebuilding the structure to a rentable or marketable condition. Thus, the District Court erred in concluding that Debtor was left without a satisfactory way to regain the lost value in the property. Even assuming the demolition was conducted to further the Redevelopment Plan, Debtor was not deprived of "all economically beneficial use of the property," and thus, no taking occurred. *See Pinkowski*, 691 A.2d at 845.

IV.

For the foregoing reasons, we will reverse the order of the District Court and reinstate the order of the Bankruptcy Court.